Milton E. Reid and Hazel F. Reid, Trading as Milton E. Reid and Company, Appellants, v. Chicago Title and Trust Company, August A. Wilhelm and Howard B. Kerr, Appellees.

### Gen. No. 43,509.

Opinion filed May 29, 1946. Released for publication June 13, 1946.

Kinne & Scovel, of Chicago, for appellants; Harry C. Kinne, of Chicago, of counsel.

Seymour N. Cohen, of Chicago, for appellees.

Mr. Justice Sullivan delivered the opinion of the court.

This action was brought by Milton E. Reid and his wife, Hazel F. Reid, real estate brokers, doing business as Milton E. Reid & Company, against the Chicago Title and Trust Company and August A. Wilhelm, and the theory of plaintiffs' original complaint was that they were entitled to recover commission from the Chicago Title and Trust Company because they were the efficient and procuring cause of the sale by said company to Wilhelm of an apartment building located at 1940 Sherman avenue, Evanston, Illinois. After plaintiffs' complaint was stricken on motion of defendant Wilhelm, they filed an amended complaint against the Chicago Title and Trust Company and Wilhelm and shortly thereafter on plaintiffs' motion Howard B. Kerr was made an additional party defendant. Summary judgment was entered in favor of the Chicago Title and Trust Company on the latter's motion and supporting affidavits. No appeal was taken by plaintiffs from this judgment. The cause was tried before a jury as to defendants Wilhelm and Kerr and at the conclusion of plaintiffs' evidence the trial court instructed the jury to find Wilhelm and Kerr not guilty. Judgment was entered in favor of said defendants on the directed verdict and plaintiffs appeal.

The amended complaint alleged in substance that on April 3, 1941 the Chicago Title and Trust Company (hereinafter for convenience sometimes referred to as the company) employed plaintiffs to procure a purchaser for the apartment building known as 1940 Sherman avenue, Evanston, Illinois, for $165,000; that thereafter plaintiff Hazel F. Reid with the com-

pany's knowledge and at its request accompanied Wilhelm to inspect the premises in question and informed him of said selling price; that plaintiffs advised the company through its agents that such premises had been exhibited to Wilhelm and that he had been advised of said purchase price; that Wilhelm assured plaintiffs that they were the only brokers who had exhibited said premises to him; that Wilhelm without plaintiffs' knowledge induced his personal attorney, Howard B. Kerr, to communicate with the company and represent to it that he (Kerr) was the broker who had procured Wilhelm as such purchaser; that on November 21, 1941 the company sold the property to Wilhelm for $165,000; that upon the closing of the deal Wilhelm and Kerr again assured the company that Kerr was the broker who had procured Wilhelm as such purchaser and that no other broker had exhibited the premises to Wilhelm, although both Wilhelm and Kerr well knew that plaintiffs had secured Wilhelm as such purchaser and that plaintiffs were the only brokers who had ever exhibited the property to Wilhelm; that upon the aforesaid assurances by Wilhelm and Kerr the company paid Kerr, who was then acting as attorney for Wilhelm in closing the deal, $5,900 as commission; that "by means of the aforesaid acts said August A. Wilhelm and Howard B. Kerr, his personal attorney, cheated and defrauded plaintiffs" out of said commission; and that the company well knew that plaintiffs had procured Wilhelm as said purchaser at the above price and that "the usual and customary commission for the sale of such real estate is . . . $5,900 . . . , to all of which plaintiffs are entitled." The amended complaint concluded with the prayer that judgment be entered in favor of plaintiffs and against the defendants, Chicago Title and Trust Company, August A. Wilhelm and Howard B. Kerr for $5,900.

The three defendants filed separate answers denying the material allegations of the amended complaint upon which plaintiffs predicated their right to recover. In addition the answers of all three defendants contained the following allegations:

"Prior to the date upon which the plaintiffs allege they showed said premises to defendant August A. Wilhelm, Chicago Title and Trust Company had mailed to the plaintiffs, and the plaintiffs had received, a so-called Brokers' List, dated 'February, 1941,' of real estate offered for sale by Chicago Title and Trust Company, Trustee, in which, on page 13, the property at 1940 Sherman Avenue, Evanston, Illinois, which is the property involved in this litigation, was listed in the following language, to-wit:

| Address | Lot Size | Const. | No. of Rooms | Heat | Gross Annual Rental | 1939 Taxes | Price. |
|---|---|---|---|---|---|---|---|
| 1940 Sherman Avenue | 147 x 151 | 4 Sty. Br. Conc. | (22/1, 16/2, 10/3, 3/4, 4-1/2) | Steam (2) Stoker | 33,120 | 4570 | Offers only |

That said listing booklet contained, in large and conspicuous type, the following statement of the terms under which Chicago Title and Trust Company would pay commissions to real estate brokers:

'Licensed Brokers will be entitled to commissions at the Chicago Real Estate Board rate only after offers submitted by them have been accepted in writing by us and sales completed.

'Only offers on our printed form, accompanied by reasonable deposits acceptable to us (not less than 7%), can be given attention.'

That the plaintiffs well knew these conditions under which Chicago Title and Trust Company paid commissions to real estate brokers for the sales of real

estate, and that said plaintiffs failed to comply with any of such conditions with respect to the property involved in this litigation.''

In so far as the record discloses the motion of the Chicago Title and Trust Company for summary judgment was not contested ·by plaintiffs and on December 1, 1944 summary judgment was entered in favor of said company.

On March 28, 1945, the day the trial commenced as to the two other ·defendants, plaintiffs were granted leave to file replies to the answers of Wilhelm and Kerr, which answers had been filed respectively on July 30, 1942 and September 18, 1942. Their reply to Wilhelm's answer, filed March 29, 1945, denied that ''Howard B. Kerr was the only broker involved in the offer made for the property in question'' and alleged *inter alia* that ''defendants, August A. Wilhelm and Howard B. Kerr conspired between themselves to prevent plaintiffs from procuring said Wilhelm's offer to purchase said property, and while said Wilhelm and Kerr were making an offer of purchase for the premises in question and while they were representing in writing to the Chicago Title and Trust Company that said Kerr was the only broker involved in this deal, said Wilhelm was falsely representing to plaintiffs that he was purchasing property other than the property in question here by reason of which fact said Wilhelm and Kerr prevented plaintiffs from receiving the commission for the sale of said premises from the Chicago Title and Trust Company''; and that ''defendants, Wilhelm and Kerr, conspired to prevent plaintiffs from receiving the commission to which they were entitled, all to the damage of plaintiffs in the sum of . . . $5,900 . . . .'' Plaintiffs' reply to Kerr's answer was substantially to the same effect.

Briefly summarized plaintiffs' evidence was to the effect that they were authorized by the Chicago Title

and Trust Company to sell the property for $165,000, that they were the only brokers who interested Wilhelm in its purchase and showed it to him, that they advised the Chicago Title and Trust Company through its agents that they had exhibited the premises to Wilhelm and informed him of said purchase price, that they secured his promise to make a written offer through them to purchase the property for $165,000, that Wilhelm, instead of making such written offer of purchase through them, secretly and without their knowledge caused his attorney, Kerr, to procure a real estate broker's license and to make the required written offer of purchase in his (Wilhelm's) behalf, that such offer was made by Wilhelm through Kerr as broker, accepted by the Chicago Title and Trust Company and the property sold to Wilhelm for $165,-000, that both Wilhelm and Kerr represented to the Chicago Title and Trust Company that Kerr was the only broker involved in Wilhelm's written offer to purchase the property for $165,000 and that Kerr received the commission.

Plaintiffs strenuously insist that the facts presented in evidence by them constituted a sufficient showing of an unlawful conspiracy by Wilhelm and Kerr to wrongfully prevent said plaintiffs from receiving a commission which they had justly earned.

The only question presented for our determination is whether plaintiffs' evidence taken as true, with all intendments therefrom most favorable to them, fairly tended to show that the defendants Wilhelm and Kerr were guilty of an unlawful combination or conspiracy to prevent plaintiffs from consummating the sale of the property to Wilhelm and receiving the commission for such sale from the Chicago Title and Trust Company.

It is immediately apparent that in order for plaintiffs to make out a prima facie case it was incumbent upon them to prove as an essential element of their

cause of action that Wilhelm owed them the duty of purchasing the property through them. Was it shown that he owed them any such duty? Upon the trial the Reids did not claim to represent Wilhelm but claimed to represent the Chicago Title and Trust Company, the seller of the property. There was no contractual relationship between Wilhelm and the Reids and the latter did not claim and made no attempt to prove that there was. The Reids and Wilhelm were strangers to each other and dealing at arm's length. The Reids and Wilhelm were under no legal obligation to deal with each other and there was no legal duty owed by one to the other. That being so no liability could attach if one refused to deal with the other.

Notwithstanding everything that plaintiffs' evidence showed transpired between them and Wilhelm, unless and until he submitted through them a written offer to purchase the property for $165,000, he was just as free to submit his offer through another broker as plaintiffs were to submit the property to another prospect. Wilhelm was not required to explain to plaintiffs why he did not desire to submit his offer through them any more than they were required to advise him what they might be doing as to other prospects. Accepting as true, as we must, the facts shown by plaintiffs' evidence, the most that can be said of such facts is that they possibly indicate that Wilhelm failed to observe the properties that should prevail in the real estate field between real estate brokers and prospective purchasers.

In the absence of any evidence tending to show that Wilhelm owed plaintiffs the duty of purchasing the property through them, he had the right to purchase same through Kerr if he saw fit to do so and, having such right it cannot be said that Wilhelm and Kerr cheated or defrauded plaintiffs or that they unlawfully conspired to do so.

Plaintiffs cite numerous authorities which enunciate familiar rules of law pertaining to unlawful conspiracies to wrongfully injure or interfere with the business of another, none of which is applicable to the facts in this case, and we therefore deem it unnecessary to discuss them.

In *Hansberry v. Holloway,* 332 Ill. 334, the factual situation was strikingly similar to that presented here in so far as the duty owed by a prospective purchaser to a real estate broker is concerned. In that case the declaration alleged that defendant in error (Hansberry) was a duly licensed real estate broker; that on November 1, 1924 he was employed by one Shafer to secure a purchaser for certain real estate at an agreed commission of $1,500; that he offered the premises to plaintiff in error (Holloway), who was ready, willing and able to purchase for the price and on the terms specified and agreed to enter into a written contract with Shafer; that Hansberry on the faith of this offer, relying upon the same and believing the same to be true, submitted the offer to Shafer, who accepted it and was ready, willing and able to enter into the contract; that Holloway, wholly regardless of his duty in the premises, wrongfully, fraudulently and without lawful reason failed and refused to enter into the contract and informed Hansberry and Shafer that he would not purchase the premises and that Hansberry was prevented from receiving the commission which he otherwise would have received; that in February 1925, Holloway fraudulently and maliciously, with the purpose and intent of deceiving Hansberry and depriving him of his commission, purchased the premises from Shafer and took title in the name of one Rosberg, fraudulently concealing from Shafer and Hansberry that Holloway was the actual purchaser who paid the purchase price, and fraudulently concealing the fact that Rosberg had, before receiving the conveyance from

Shafer, executed a conveyance to Holloway, by reason whereof Holloway and Rosberg fraudulently took and received from Shafer the commission to which plaintiff was lawfully entitled and wrongfully and fraudulently applied the same to their own use, by means whereof Hansberry was deceived and defrauded and sustained the loss of the commission. There the court said at pp. 336, 337 and 338:

"It is insisted that the declaration did not state a cause of action. . . . A declaration must state all of the facts necessary to sustain the cause of action and the facts must be stated with certainty. A declaration which fails to allege a fact the existence of which is necessary to entitle plaintiff to recover does not state a cause of action. (*Allis-Chalmers Co. v. City of Chicago*, 297 Ill. 444; *Beveridge v. Illinois Fuel Co.*, 283 id. 31; *Walters v. City of Ottawa*, 240 id. 259.) It is insisted that the declaration does not allege any duty owing by plaintiff in error to defendant in error; that it does not state the nature of any such duty or allege facts from which any duty arose; that plaintiff in error had the right to buy from Shafer if he saw fit to do so; that he was under no obligation to buy through defendant in error; that if everything alleged was true, the only right of action defendant in error had was against Shafer.

"The allegation as to the employment of defendant in error by Shafer, the agreement of plaintiff in error to buy and to enter into a written contract, that defendant in error relied on this agreement and submitted the offer to Shafer, who accepted it, and that plaintiff in error, regardless of his duty in the premises, refused to enter into the written contract, did not state a cause of action between plaintiff in error and defendant in error. No written contract was executed. A verbal agreement to buy was not binding on plaintiff in error under the Statute of Frauds. He was under no legal duty to buy. He had a legal

right to refuse to carry out the verbal contract, if he saw fit, without incurring any liability to defendant in error for a commission. The allegations that in February, 1925, plaintiff in error fraudulently, with the purpose of deceiving defendant in error and depriving him of his commission, purchased the premises from Shafer in the name of Rosberg and concealed the fact that plaintiff in error was the actual purchaser, and that Rosberg conveyed to plaintiff in error, and plaintiff in error and Rosberg received a commission from Shafer, did not state a cause of action. *The parties were dealing at arm's length, as entire strangers. No contractual relation existed between them. If plaintiff in error saw fit to buy directly from Shafer he had a right to do so. If Shafer was willing to ignore his agent and sell to plaintiff in error, that act did not make plaintiff in error liable to defendant in error in the absence of allegations of fact in the declaration which showed a legal liability. The declaration did not state a cause of action.''* (Italics ours.)

In our opinion the law as pronounced in the *Hansberry* case is peculiarly applicable to the situation presented by plaintiffs' evidence and they have cited no authority to the contrary. Just as it was held in that case that the declaration did not state a cause of action because no facts were alleged therein showing any duty on the part of the prospective purchaser Holloway to buy the property through the real estate broker Hansberry, so it must be held here that plaintiffs' evidence did not make out a prima facie case in that it utterly failed to prove an essential element of their cause of action, namely, a legal duty on the part of Wilhelm to purchase the property through them. If, as was held in the *Hansberry* case, the prospective purchaser Holloway was within his rights and incurred no liability to the real estate broker Hansberry in refusing to carry out his verbal agreement to purchase, it can be said with equal propriety in the instant case that

Wilhelm was within his rights in refusing to purchase the property through plaintiffs.

We are in accord with the conclusion reached by the trial court that plaintiffs' evidence failed to make out a prima facie case.

For the reasons stated herein the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.