Anna C. Hackett, Appellee, v. Sarah Farkas, and
Robert Bodinof, Appellant.
Appeal of Sarah Farkas, Appellant.

**Gen. No. 47,299.**

First District, Second Division.
July 3, 1958.
Rehearing denied September 18, 1958.
Released for publication September 18, 1958.

Merwin S. Rosenberg, Goldberg & Levin, all of Chicago (Mayer Goldberg, and Marvin Sacks, of counsel) for Sarah Farkas, appellant.

Louis W. Reinecker, of Chicago (Clarence E. McElhaney, Jr., of counsel) for Anna C. Hackett, appellee.

JUSTICE KILEY delivered the opinion of the court.

This is an action by a licensed real estate broker to recover fees on the sale of property located at 5511 Kenmore Avenue, Chicago. Defendant Wolf was dismissed from the case at the close of the evidence and the malice count in the complaint was stricken. The court, without a jury, found and entered judgment for plaintiff for $5,000. Sarah Farkas, referred to here as defendant, appeals.

Bodinof purchased the property in question from Miller Properties Inc. on December 5, 1949, under contract for warranty deed. In January of 1950 he offered the property for sale on an open listing. On March 31, 1950, he quit claimed his interest in the premises to Moses Wolf, as trustee, with defendant and her husband as beneficiaries. A trustee's deed, dated March 13, 1954 conveyed Wolf's interest in the property to defendant. Her husband died March 16, 1954. On August 30, 1955, pursuant to the contract of December 5, 1949, between Miller Properties Inc. as seller and Bodinof as purchaser a warranty deed conveying the property to defendant was delivered to her. This suit was filed February 4, 1955, after plaintiff's demand for commission was rejected.

310

Plaintiff alleged in her complaint as amended that she was the procuring cause of the sale to defendant and that the latter along with Bodinof wrongfully conspired to deprive her of her broker's commission on the sale.

We find no merit in the contention that the Municipal Court lacked jurisdiction of the subject matter because the amount of plaintiff's claim exceeded the statutory limit of $5,000. The original ad damnum was in excess of the limit of the jurisdiction of the Municipal Court. Plaintiff moved to amend her pleadings to bring the ad damnum within the limit. The motion was not expressly ruled upon but the judgment, for an amount not in excess of $5,000, implies that the court allowed plaintiff's motion. We think there was no error in the instance, and the cases cited by defendant are not in conflict with this conclusion.

██ Defendant contends that plaintiff failed to prove the amount of the commission due.

Defendant testified that she and her husband purchased the property March 31, 1950. The agreement between Miller Properties Inc. and Bodinof shows that at the time Bodinof's interest was assigned to Wolf the balance due on the contract was more than $95,000. This amount plus the down payment made by defendant and her husband to Bodinof place the selling price well over $100,000. The warranty deed to defendant bore revenue stamps in the amount of $137.50 indicating a consideration of $125,000. Finally, the testimony for plaintiff and that of Bodinof indicates a consideration of well over $100,000. It was not disputed that the customary rate of commission "on the sale of property of this nature in the City of Chicago" in the "year 1950" was "five per cent." We conclude that the amount of the commission claimed was sufficiently proven. There is no contention made by defendant that

if the seller accepts a sum less than that mentioned to the broker, the broker is not entitled to recover his commission on the amount accepted by the seller.

Defendant claims that the findings that plaintiff was the procuring cause and that she, defendant, joined in a wrongful conspiracy are against the manifest weight of the evidence.

Plaintiff testified that about the third week of January, 1950, defendant and her husband asked her whether she had "any property on the north side that we could buy with the amount of cash that we have to invest"; that she suggested Bodinof's property; that at their request she called Bodinof's manager who made arrangements for the Farkases to see the property; and that she then called Bodinof and told him that she "had submitted his hotel to Mr. and Mrs. Farkas" and to another prospect, whereupon he told her that if she got "a buyer for the hotel for $150,000" he would "pay full broker's commission."

Plaintiff testified that she had many conversations with the Farkases subsequently; that they came to her apartment "on a Sunday afternoon about one month after they first looked at the property"; that she asked a guest to "step into the next room"; that on this visit they told her that they had known Bodinof during the depression; that if she would waive her commission and "let the deal go through the way we have made it we will give you an exclusive to sell this property as soon as it is our property"; that she told them that she would not waive her commission and asked them why they were interested in the commission usually paid by the seller; and that Mrs. Farkas said "that is the way we have to make the deal" and that if it cannot be so made then "we can't buy the hotel."

Bodinof, his manager and plaintiff's guest corroborated much of the above testimony. Bodinof testified

312

that plaintiff talked to him in the early part of 1950 and that he said "if she got $150,000.00 she would get full commission"; that he told the Farkases "that I was selling the building and they told me that there was no commission going to be paid"; that they told him "that if they bought the building for $130,000.00 that would have to be net and I said, 'yes' "; that he sold the property to Wolf whom he had never seen in his life and that this "was done through Mr. Farkas"; and that he was "put" in "bankruptcy on January 7, 1955."

Bodinof's manager testified that plaintiff called her to say she was sending the Farkases out to see the building; that the Farkases came to her office and told her plaintiff had sent them; and that they "came back several times" and on one visit asked her if she would tell them whether or not everything agreed with the operational statement plaintiff gave them.

Plaintiff's guest testified that from another room she overheard the conversation between the Farkases and plaintiff about waiving the commission. Defendant testified that the guest was at plaintiff's home and did go into another room while plaintiff and she had a discussion. She denied, however, that they discussed a waiver of the commission, saying they discussed only "house decorating."

The oral testimony is corroborated by the treatment of the deeds. Defendant's husband directed Bodinof to quit claim his interest to Wolf whom Bodinof never saw. The deed executed in 1950 was not recorded until 1954.

■■ The evidence clearly shows that plaintiff was the procuring cause and justifies the inference that Bodinof and the Farkases were having difficulty in reaching a selling price; that by eliminating the payment of a broker's commission the difficulty could be

313

surmounted; that the Farkases attempted to induce plaintiff to waive her commission; that failing in this they and Bodinof conspired to circumvent a commission to plaintiff by obscuring the sale to the Farkases through the quit claim to Wolf; that the quit claim deed was not recorded for almost four years in order to withhold from plaintiff the fact of the transaction; and that all this was done with the intent to deprive plaintiff of the commission she was entitled to under her agreement with Bodinof.

■ Under the law in Illinois, following Lumley v. Gye, 2 E. & B. 216, a defendant is liable for intentionally, and without justification, inducing another person to breach his obligations with a third party whereby the third party suffers damages. Doremus v. Hennessy, 176 Ill. 608.

Plaintiff charges a conspiracy. In Levinson v. King's Court Corp., 13 Ill.App.2d 432, a somewhat similar situation in which conspiracy was alleged, the court held, in deciding that the broker had a cause of action against the purchaser, that the "judgment should be against all the defendants" where "the evidence establishes that defendants joined in the plan to deprive plaintiff of her commission." There the buyer who was plaintiff's prospect was present when another broker secured an "exclusive" from the seller naming it as the broker. No authority is cited in the Levinson case for the extension of the rule in Lumley v. Gye, followed in Doremus v. Hennessy. The Court of Appeals of New York in Hornstein v. Podwitz, 254 N. Y. 443, 173 N. E. 674, held that the complaint, in which conspiracy was alleged, stated a cause of action against the buyer for damages and said that "all of the parties who induced the breach of the contract are jointly and severally liable for the commission due plaintiff."

314

█ The holdings in the Hornstein and Levinson cases logically follow from the rule first enunciated in Lumley v. Gye, and we think they apply to the inferences that could be drawn from the testimony in this case. We conclude that plaintiff was the procuring cause of the sale and that the court was justified in inferring that defendant was a party who took part in a conspiracy to induce the breach and is therefore liable.

The cases cited by defendant do not militate against our conclusion. In Hansberry v. Holloway, 332 Ill. 334, neither conspiracy between the buyer and seller nor interference with a third parties' contractual rights were questions on appeal. For the same reason Reid v. Chicago Title & Trust Co., 329 Ill. App. 134, is not applicable.

We need not consider any other points raised. For the reasons given the judgment is affirmed.

Affirmed.

LEWE, P. J. and MURPHY, J., concur.