NATIONAL GAS APPLIANCE CORPO-
RATION, Plaintiff-Appellant,

v.

The MANITOWOC COMPANY, Inc. and
AB Electrolux, Defendants-Appellees.

No. 13668.

United States Court of Appeals
Seventh Circuit.

Dec. 18, 1962.

Rehearing Denied Jan. 23, 1963.

John J. Kelly, Jr., Francis B. Stine, and John J. Kelly, Chicago, Ill., for appellant.

Walter J. Cummings, Jr., Kenneth F. Burgess, Harlowe E. Bowes, William M. McGovern, Jr., Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellee AB Electrolux.

A. F. Rankin, Manitowoc, Wis., Lowell C. Noyes, Chicago, Ill., Clark, Rankin, Nash, Emmerling & Spindler, Manitowoc, Wis., Hibben, Noyes & Bicknell, Chicago, Ill., for appellee Manitowoc Co., Inc.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity action [1] seeking damages for breach of contract against Electrolux, a Swedish corporation; for unlawful inducement of the breach by Manitowoc Company; and for an unlawful conspiracy of both defendants to injure plaintiff's business. At the close of plaintiff's evidence on the issue of liability only, the District Court directed a verdict for the defendants, and entered judgment accordingly. Plaintiff has appealed.

Plaintiff corporation was organized in 1957 to market gas refrigerators. Beginning in the fall of 1957, plaintiff, through its chief promoter and later president, Walker Sheriff, carried on negotiations with defendants in promotion of the gas refrigerator. It was to consist of an Electrolux cooling unit in a cabinet to be manufactured by Manitowoc. There were meetings in Sweden and the United States, and correspondence among the three corporations. Early in 1958, Electrolux broke off its relationship with plaintiff, and this suit followed.

 Because of the directed verdicts, the issue here is whether there is sufficient evidence to raise questions of fact, on each count, for the jury. 5 Moore, Federal Practice 2313–14. In deciding the issue, we must consider the evidence in the light most favorable to

---

1. The action was originally commenced in the Circuit Court of Cook County, Illinois, and was removed to the United States District Court for the Northern District of Illinois, Eastern Division.

plaintiff, against whom the motion was directed. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 700–701, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Lescher Building Service Inc. v. Local 133, Sheet Metal Workers Union, 310 F.2d 331 (7th Cir., 1962).

The most favorable evidence for plaintiff on the question of breach of contract alleged in Count 1 is: Following an initial telephone conversation with Electrolux in August, 1957, Sheriff and two associates went to Stockholm for meetings with Electrolux officials. The agenda dealing with the provisions of a contract was prepared by Electrolux. On September 26, 1957, President Ekman of Electrolux wrote Sheriff in Chicago to "confirm our * * * verbal understanding * * * regarding the terms and conditions under which AB Electrolux will sell to your organization absorption refrigerator units * * *."

On January 21, 1958, Ekman wrote Sheriff setting forth the terms of a "draft agreement" which would bind Electrolux to manufacture the cooling devices. It provided for payment, by plaintiff, of one-third of the price with the 1958 order, one-third within half of the time for delivery, and one-third "against shipping documents."

Plaintiff cabled its first firm order to Electrolux on January 20, 1958. On January 22, Laurin, for Electrolux, wrote plaintiff easing the schedule of payments provided in clause 6.[2] On January 29, plaintiff cabled Electrolux that the terms of the Ekman draft were satisfactory, and stated, "DRAW AGREEMENT."

On January 31, Electrolux wired thanks for plaintiff's cable and asked for the January payment. On February 4, it cabled plaintiff that it had received the order, but not payment. Three payments of $1870.25 each on January 31, February 3, and February 7, 1958, were cabled to Electrolux by plaintiff in full payment of the January 20 order. On February 10, Electrolux cabled its withdrawal from the arrangement.[3]

We think the evidence recited is sufficient to support a verdict for plaintiff on Count I.

The question whether the correspondence created a contract or contemplated a subsequent formal contract is one of intention. El Reno Wholesale Grocery Company v. Stocking, 293 Ill. 494, 127 N.E. 642 (1920); Borg-Warner Corp. v. Anchor Co., 16 Ill.2d 234, 156 N.E.2d 513 (1959); 1 Williston, Contracts, § 28 (3rd ed. 1957). The jury could reasonably find, from the evidence most favorable to plaintiff, that the parties intended the Ekman draft and plaintiff's subsequent cable to be the offer and acceptance; that the words "draw agreement" in plaintiff's cable referred to a more formal expression of the agreement reached, and that the Electrolux cables of January 31 and February 4 requesting payment implied the existence of an agreement. That being so, it was error to take the question from the jury.

But Electrolux contends that the directed verdict was proper nevertheless because plaintiff's failure to raise adequate financing demanded by Electrolux,

2. This letter stated, " * * * According to the terms of payment agreed upon you should actually now with your order remit us one third of the total f. o. b. value $186,900.—of the 3.200 units ordered. In order to relieve the financial strain which it would cause you we are, however, willing to spread payments according to the delivery time needed normally, in other words as if the orders had been received as follows: * * *." The letter went on to cover shipment leading to a payment plan providing, for instance, that a March shipment would

be payable $1865.00 in January, same amount in February, and $1870.00 in March.

3. The cable read as follows: "REFERENCE TELEPHONE CONVERSATION SEVENTH MEANTIME FURTHER DAMAGING INFORMATION YOUR FINANCIAL BACKGROUND AND DEALINGS FORCES US WITHDRAW OFFER FORTHWITH WE CONSEQUENTLY UNABLE DEAL WITH YOU—"

and its failure to exclude Chamberlin[4] from its organization, justified the rescission of the contract.

The jury could reasonably infer that Electrolux knew, could or should have known plaintiff's financial capacity when the contract was made; that it accepted plaintiff's order of January 20 in the light of Laurin's letter easing the original payment schedule; that Electrolux had no contract right on February 4 to demand of plaintiff, as it did, a bank guarantee of $186,900 by February 10, and an additional guarantee of $506,200 for further orders; that plaintiff had substantially complied with Electrolux's demand that Chamberlin be removed from plaintiff's enterprise; and that the Chamberlin relationship and the refused demands for guarantees did not justify rescission.

We think plaintiff was entitled to have the rescission issue submitted to the jury. The resolution of the issue depends upon whether the representations made by plaintiff as to its financial situation and Chamberlin's participation were sufficient causes for rescission. Those are jury questions. Sampson v. Marra, 343 Ill.App. 245, 256, 98 N.E.2d 523, 528 (1951), 12 Illinois Law & Practice, Contracts § 132, § 347. And the arguments of Electrolux made here related to those questions are also for the jury.

The next question is whether the District Court erred in directing a verdict against plaintiff on the charge, in Count II, that Manitowoc unlawfully induced the breach of contract by Electrolux.

The most favorable view for plaintiff of the evidence and inferences is: Manitowoc knew of plaintiff's contract with Electrolux, and at a January 30 meeting between representatives of plaintiff and the two defendants, sought to remove plaintiff from its relationship with Electrolux. At the meeting, West of Manitowoc and Ullstrand of Electrolux had a private conference in West's office regarding direct transactions between them. Manitowoc officers degraded plaintiff's financial stability and Sheriff's character in conversations with, or in the presence of, Ullstrand for the purpose of supplanting plaintiff. And Manitowoc did so by inducing Electrolux to breach its contract with plaintiff, resulting in loss to the latter. This would support a finding for plaintiff on Count II. Doremus v. Hennessy, 176 Ill. 608, 52 N.E. 924, 54 N.E. 524, 43 L.R.A. 797, 802 (1898); Hackett v. Farkas, 19 Ill.App.2d 309, 314, 152 N.E.2d 475, 477 (1958); Northern Insurance Co. of New York v. Doctor, 23 Ill.App.2d 225, 161 N.E.2d 867 (1959).[5] Whether Manitowoc was justified in its actions and in its disclosures to Ullstrand is a question for the jury.

We see no merit in the contention that Count III stated no claim upon which relief could be granted. This court held, in a prior appeal,[6] that Count III was defective in failing to allege "overt acts committed in pursuance" of the conspiracy. Thereafter, plaintiff amended the count[7] and Electrolux moved to dismiss. The order of the District Court denying the motion stated that the amended count appeared to fol-

---

4. John Chamberlin, one of Sheriff's original associates in this venture, received unfavorable publicity in October, 1957, as a result of which Electrolux sought his removal.

5. "The essential elements of this tort [inducement to violate a contract with another] are: (1) defendant's knowledge of the existing contract; (2) the inducement; (3) the subsequent breach by the third person; and, (4) damage to the plaintiff." 23 Ill.App.2d 225, 228, 161 N.E.2d 867, 869 (1959).

6. 270 F.2d 472, 476 (7th Cir., 1959).

7. The amended Count III alleged the following overt acts: (1) various communications and meetings between Electrolux and Manitowoc; 2) Manitowoc's refusal to execute a contract prepared by Manitowoc for plaintiff's signature and dealing with the business relationship between Manitowoc and plaintiff; 3) Manitowoc's refusal to deliver to plaintiff the prototype cabinet it had made for plaintiff; 4) Electrolux's refusal to perform its contract with plaintiff; 5) Electrolux's refund, without plaintiff's request or consent, of $5,595.00 paid by plaintiff to Electrolux for cooling units; 6) use by

low the requirements set forth in this court's 1959 opinion. We agree with the District Court that the deficiency previously found by this court was supplied by the amendment.[8]

Finally, defendants contend there was no evidence of an illegal conspiracy. The most favorable view to plaintiff of the evidence and inferences is: After Manitowoc learned of plaintiff's relationship with Electrolux, it became interested itself in the gas refrigerator business. Manitowoc and Electrolux officials met through plaintiff, and later communicated in meetings and correspondence. Manitowoc refused to enter into a written contract with plaintiff for making the cabinets, although it had prepared and submitted the instrument to plaintiff, which signed it. Subsequently Manitowoc refused to deliver a test cabinet built for plaintiff. In a meeting on January 30, two Manitowoc officials degraded plaintiff's financial stability and Sheriff's character in conversations with Ullstrand of Electrolux. At the same meeting, Manitowoc expressed interest in the field, broke off relations with plaintiff, and discussed direct dealings with Electrolux. In February, Electrolux demanded the bank guarantees and cabled termination of plaintiff's contract. In the same month, Manitowoc purchased some cooling units from Electrolux and used the units with test cabinets made for plaintiff. By March 11, Manitowoc and Electrolux had made a preliminary agreement. On that day, Electrolux's letter told plaintiff it "should abstain" from proceeding further in the business. Plaintiff was eliminated from competition.

The jury could reasonably infer from the evidence a breach of contract by Electrolux—a wrong in itself; refusals by Manitowoc to enter the contract with plaintiff and to deliver the test cabinet —actions which if innocent in themselves became wrong when done with a wrongful intent; and that both defendants acted with the malicious intention to drive the plaintiff out of business. This would be sufficient under Illinois law to support a verdict for plaintiff on Count III. Doremus v. Hennessy, 176 Ill. 608, 52 N.E. 924, 54 N.E. 524, 43 L.R.A. 797 (1898); Purington v. Hinchliff, 219 Ill. 159, 76 N.E. 47, 2 L.R.A.,N.S., 824 (1905); 11 Illinois Law & Practice, Conspiracy § 14.

It is not necessary that plaintiff prove an actual unlawful agreement. People v. Small, 319 Ill. 437, 448–449, 150 N.E. 435, 440 (1925); Hackett v. Farkas, 19 Ill.App.2d 309, 313–314, 152 N.E.2d 475, 477–478 (1958); Majewski v. Gallina, 17 Ill.2d 92, 100, 160 N.E.2d 783, 788–789 (1959). It may be inferred from the evidence of more than a coincidental sequence of events. Plaintiff does not charge a conspiracy in violation of the Sherman Act. Nevertheless, we think the facts in Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), and the Supreme Court's finding that a trial was necessary on the conspiracy charge there supports our decision here.

We distinguish Weir v. Chicago Plastering Institute, 272 F.2d 883 (7th Cir., 1959) and Delaware Valley Marine Supply Company v. American Tobacco Company, 297 F.2d 199 (3rd Cir., 1961) on their facts. For different reasons, and

the two defendants of "the prototype cabinet which Manitowoc had fabricated for plaintiff as a basis for the negotiations between Manitowoc and Electrolux contemplating the manufacture by Manitowoc of a refrigerator using the Electrolux cooling unit to be marketed in the United States by Manitowoc, or by Manitowoc and Electrolux in combination each with the other;" 7) entry by Manitowoc and Electrolux into a contract with each other; and 8) Electrolux's refusal to

renew its business relations with plaintiff, advising plaintiff of its contract with Manitowoc and "that there no longer was room for plaintiff in the gas refrigeration field in America."

8. Under Rule 12(h), FEDERAL RULES OF CIVIL PROCEDURE, the objection was not waived by pleading to the complaint; the defense of failure to state a claim may be raised at any time.

under entirely different fact situations, both courts there found insufficient evidence to support a finding of conspiracy. We merely hold here that there is sufficient evidence to raise a jury question on the conspiracy issue.

For the reasons given, the judgment is reversed and the cause remanded for further proceedings.