191 So.2d 592 (1966)
The MEAD CORPORATION, an Ohio Corporation, U-B Realty Corp., a Florida Corporation, and al Brenner, Appellants,
v.
George H. MASON and Lina M. Mason, His Wife, D/B/a Mason Realty, Appellees.
No. 66-87.
District Court of Appeal of Florida. Third District.
November 8, 1966.
Feibelman, Friedman, Hyman & Britton, Fort Lauderdale (for Mead Corp.); Cutler & Efronson, Miami, for U-B Realty & Brenner, appellants.
Bernard B. Weksler, Horton & Schwartz, Miami, for appellees.
Before HENDRY, C.J., and PEARSON and BARKDULL, JJ.
*593 HENDRY, Chief Judge.
This is an appeal by the defendants from a final judgment against them jointly in a trial without jury in the amount of $13,171.40.
In their complaint, the plaintiffs alleged a listing contract from the defendants, Al Brenner, U-B Realty Company and Superior Window Company (which was subsequently dropped as a defendant) and performance thereunder by production of a purchaser, the Mead Corporation. The plaintiffs sought recovery of a 5% commission of $24,150.00 based upon a contract either expressed or implied. In addition, it was charged that the defendants conspired and colluded together to deprive and defraud the plaintiff's of their commission, to their damage in the amount of said commission, all to the individual profit and benefit of the defendants.
The facts reveal that Otto Guidi, an employee of Mason Realty, learned from an officer of the Mead Corporation that they were interested in finding a new location for the operation of their business. On March 19, 1965, Guidi contacted Al Brenner, the principal officer of the defendants, U-B Realty Corporation and Superior Window Company, who advised him that their building was for sale for the sum of $650,000.00. Guidi showed the building to a representative of the Mead Corporation, and was thereafter advised by Brenner that the building could be purchased for $550,000.00. On March 22, 1965 Guidi again took representatives of the Mead Corporation to the building and showed them around the premises. Guidi obtained a letter from the Mead Corporation indicating that they had been shown the building by him. Guidi then requested all the parties to keep him informed. Brenner and Guidi discussed the amount of the commission and it appears that Guidi indicated he would accept $13,000.00. On April 1, 1965, the plaintiff, George H. Mason, sent a letter to the Mead Corporation to inform them that it was their representative, Guidi, who brought the parties together for the purpose of negotiating a purchase of the building then occupied by Superior Window Company. The defendants, without informing the plaintiffs, continued to negotiate and finally reached an agreement of purchase and sale which was executed on April 14, 1965 for the amount of $483,000.00. The agreement contained the following clause: "It is understood by both seller and purchaser that there is no broker in this transaction." The closing took place on April 30, 1965. By letter of the same date, Brenner acknowledged that the Mead Corporation was not responsible for any real estate commission and that any obligation for a commission will be on the U-B Realty Company unless the broker was specifically employed by the Mead Corporation. The plaintiffs did not receive a commission and this suit followed.
Based upon the principle that "ordinarily, and in the absence of some understanding or agreement to the contrary, the vendor alone is liable for the payment of the commission * * *",[1] the defendants contend that at the most the plaintiffs have a contract claim for a commission against the seller alone. Defendants also contend that the plaintiffs have not established the essential elements necessary to prove the charge that the defendants conspired together to deprive them of their commission. We conclude that the evidence is sufficient to warrant recovery on the latter charge and affirm.
"The intentional and unjustified interference with the advantageous business relationship existing between others which results in injury constitute a tort under the law of this State."[2] The defendants cite *594 Nicol v. Bressler, 159 Fla. 668, 32 So.2d 457 (1947) in support of their argument that no damages have been established since the broker still has all that he could have  a claim for compensation against the seller. Although the Nicol case does assert that point of view, our courts have since receded from it. In Schneider v. Binder, Fla. 1954, 72 So.2d 909, a broker complained that a leasehold was listed with him for sale and that he found and presented a purchaser with whom the seller and purchaser negotiated and consummated the sale in secret, thereby perpetrating a tortious fraud on the broker. The broker relied on Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1; California Auto Court Ass'n v. Cohn, 98 Cal. App.2d 145, 219 P.2d 511 and other cases to support this contention. Justice Terrell, speaking for our Supreme Court at 72 So.2d 909, stated, "We have examined these cases and the doctrine on which they are based has much to commend them to a court of equity but we are confronted with a complaint that is devoid of some of the fundamental requisites of such a pleading."
In Hornstein v. Podwitz, supra, 254 N.Y. at page 449, 173 N.E. at page 675, the New York Court of Appeals stated:
"They [the purchasers] committed a legal wrong which gave rise to a cause of action in favor of the plaintiff [the broker]. The fact that the plaintiff also has a cause of action against his principal [the seller] for breach of contract does not prevent his having a cause of action in tort against them. They cannot be heard to say that they are not liable for their wrongful act because the owner of the premises is also liable to the plaintiff for his commissions. All of the parties who induced the breach of the contract are jointly and severally liable for the commissions due the plaintiff."[3]
In California Auto Court Ass'n v. Cohn, supra, the California District Court of Appeal, Second District, concluded that a broker is not confined to an action ex contractu against the party with whom he contracted.[4] In Oro Verde Groves, Inc. v. Fuchs, Fla.App. 1962, 136 So.2d 12, this court citing Schneider v. Binder, supra, affirmed a summary final judgment against both the seller and purchaser for the amount of a real estate commission in an action charging them with having conspired and made a sale at a lesser price to deprive the broker of his commission. In the Oro Verde case, the broker obtained a listing from the seller, the terms of which set a sales price of $120,000.00 "net above all expenses". A purchaser was produced who signed a purchase contract submitted by the broker containing a sales price of $135,000.00 (the gross figure necessary to produce the $120,000.00 net) with certain closing terms not provided by the seller. After this contract was rejected by the seller, the broker continued to work on the deal and made some headway. However, after direct contact with the seller, the purchaser cooled towards the broker. Subsequently, the parties concluded the sale without the broker's knowledge on terms very much the same as the contract submitted by the broker. In affirming the summary judgment this court accepted the view that although a seller may be liable for a commission, the purchaser and the seller may also be jointly liable for conspiring together to deprive the broker of his commission.
In the case before us, the terms outlined by the seller consisted only of an "asking price" which the evidence indicates was not so fixed that the seller would decline consideration of a bid of a lower *595 amount. The mere quotation of an asking price does not indicate a business relationship with the seller.[5] There is evidence, however, that the seller did know of the brokers' services and that they were rendered with the expectation of receiving a commission. In fact, the amount of the commission was discussed. This would substantiate the existence of a business relationship between the brokers and the seller.
The plaintiffs must also show that the purchaser intentionally and without justification interfered with this relationship; and, if the seller acted in concert with the purchaser they are jointly and severally liable.[6]
It is not controverted that all of the defendants knew of the services rendered by plaintiffs' salesman, Guidi. Yet, he was not informed that the defendants had reached an agreement nor was he informed of the closing of the contract of sale. More damaging is the fact that the seller and the purchaser agreed in writing that there was no broker involved in the transaction. This is sufficient to establish that the defendants joined in a plan to deprive the brokers of their commission.
The injury alleged by the brokers is the amount of the commission. Under the circumstances of this case, the brokers were entitled to a commission when they produced a purchaser ready, willing and able to buy on terms finally agreeable to the seller.[7] Because of the defendants' wilful acts the seller breached its contract and did not pay the brokers their commission; thereby injuring the brokers in the amount of said commission.[8]
Having concluded that there is sufficient evidence to warrant a recovery against all of the defendants, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Moss v. Sperry, 140 Fla. 301, 191 So. 531, 537, 125 A.L.R. 909 (1939).
[2] Franklin v. Brown, Fla.App. 1964, 159 So.2d 893, 895; John B. Reid & Associates, Inc. v. Jimenez, Fla.App. 1965, 181 So.2d 575.
[3] See also Katz v. Thompson, 19 Misc.2d 848, 189 N.Y.S.2d 982 aff'd 9 A.D.2d 951, 196 N.Y.S.2d 578.
[4] See also Hackett v. Farkas, 19 Ill. App.2d 309, 152 N.E.2d 475 (1958); Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 73 A.L.R. 2d 390 (1958); Annotations, 97 A.L.R. 1273 and 146 A.L.R. 1417; and 30 Am. Jur., Interference § 30.
[5] City Builders' Finance Co. v. Stahl, 90 Fla. 357, 106 So. 77 (1925).
[6] Oro Verde Groves, Inc. v. Fuchs, Fla.App. 1962, 136 So.2d 12; Prosser, Torts § 46 pp. 234, 235 (2d ed. 1955).
[7] Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876 (1944); National Airlines, Inc. v. Oscar E. Dooly, Assoc., Inc., Fla.App. 1964, 160 So.2d 53; Moylan v. Estes, Fla. App. 1958, 102 So.2d 855.
[8] See 30 Columbia Law Review 232 (1930).