Thomas B. BAILEY, Plaintiff,

v.

MEISTER BRAU, INC., James H. Black Company, Wilhelmina M. Harre, Continental Illinois National Bank & Trust Co., Robert G. Mullen, Charles F. Schaeffer, Robert S. Foster, Ronald T. Cappadocia, James H. Black, Jr., Margaret H. Black, Arthur F. Harre, and Bernard M. Berry, Defendants.

No. 69 C 1938.

United States District Court,
N. D. Illinois, E. D.

Dec. 21, 1970.

Nachman, Munitz & Sweig, Donald Page Moore, Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Don H. Reuben, Steven L. Bashwiner, and Michael W. Coffield, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

Plaintiff Thomas Bailey, a 3,000 share stockholder in the James H. Black Company, and, until May, 1969, an officer and director thereof, alleges a contract with James H. Black, now deceased, giving him a "sixty day right of first refusal" on the majority of the Black Company stock, which contract he alleges is enforceable against James Black's estate.

After James Black's death on October 31, 1968, the Continental Bank, as executor and owner of his 57,000 shares of stock, participated in a transaction which resulted in the transfer to Meister Brau, Inc. of the assets of the Black Company and all of the stock of the Black Company except plaintiff's 3,000 shares.

The Black Company received in ultimate exchange for the transfer of its assets, 70,000 shares of the stock of Meister Brau, Inc., and plaintiff Bailey remained a minority shareholder in Black Company, now no longer a going con-cern, but rather a company whose sole asset is Meister Brau stock of an alleged value of $440,000 or less, as contrasted with the alleged value of the Black Company as a going concern, said by plaintiff to be $1,870,000.

The complaint alleges that the Continental Bank, Meister Brau, the directors of the Black Company and others conspired to interfere with his contractual rights and to defraud him. He further alleges a conspiracy to defraud the Black Company in violation of the federal security laws and, as a shareholder, asserts a derivative action on behalf of the Black Company.

It is clear that plaintiff's claims based upon the 1966 Black-Bailey contract do not constitute a federally cognizable cause of action sounding in contract. Unless the facts alleged support the allegations of violations of Section 17(a) of the Securities Act of 1933 and Rule 10b–5 of the Securities Exchange Commission, there would appear to be no federal jurisdiction.

It is plaintiff's position that he has asserted a cause of action in either or both of Counts I and II cognizable under the federal security laws and supportive of federal jurisdiction, thus giving this court jurisdiction over the remaining count or counts under the doctrine of pendant jurisdiction. Defendants contend that neither Count I nor II states a federally cognizable cause of action, but rather are contrived to bring plaintiff's suit, on his alleged contract right to purchase Black stock, into the federal court.

Count I is a derivative action alleging that the Black Company was fraudulently induced to transfer assets worth $1,-870,000 for 70,000 shares of Meister Brau stock worth $440,000. It is alleged that this was accomplished by means of a conspiracy among the defendants to defraud and deceive the Black Corporation and that the actions of the conspirators and the result they accomplished were in violation of Section 17(a) of the Securities Act, 15 U.S.C. Sec. 77q(a); Section 10(b) of the Exchange Act, 15

U.S.C. Sec. 78j(b); and Rule 10b–5 of the Securities and Exchange Commission.

Defendants argue that the cause of action set out in the complaint cannot constitute a violation of the 1933 or 1934 Securities Acts, or the rules thereunder, since the sections alleged to have been transgressed by defendants' conduct in each instance are addressed to fraudulent or deceptive practices. The Black Company, it is argued, could not have been deceived since the entire transaction, from beginning to end, was known to and acquiesced in by the Black Company Board of Directors.

Plaintiff counters that every member of the Board, to a greater or lesser degree, was involved in a conflict of interest situation, with the result that his or her knowledge cannot be imputed to the corporation. If this be the case, it is argued, the corporation could have been and was deceived.

In considering this argument, the threshold question is whether the conflicts of interest alleged are apparent on the face of the complaint sought to be dismissed, so that it can be said that allegations presumed to support federal jurisdiction are adequate to do so. The detailed allegations of the complaint are deemed adequate to support the theory of conflict of interest, and therefore, for purposes of the motion to dismiss, the allegation may be taken as fact that the directors participated in the transactions described in the complaint with divided loyalties.

In arguing the unavailability of 15 U.S.C. Sec. 77q, 15 U.S.C. Sec. 78j and Rule 10b–5 to the plaintiff in Count I, defendants make two major points. The first of these is that deception is the essential ingredient of a valid cause of action under these provisions, and that no deception is here alleged. The second argument is that these statutes and rule were designed for the protection of the investor in securities, and applicable only to the trading of securities in the market, as distinguished from the transfer of securities as a vehicle for the sale of a going business.

As to Count II, defendants urge that the securities laws and rule relied upon are available only to purchasers or sellers of securities. Bailey, it is argued, was neither.

Count III is Bailey's action on his alleged contract which depends upon Count I or II for pendant jurisdiction.

## COUNT I

Treating these arguments in the order of their statement above, it becomes necessary to determine whether the factual allegations supportive of the prayer in Count I for relief under the federal securities laws, make out a cause of action within the purview of these laws. More precisely, the issue is whether Bailey makes out a case of fraud and deception sufficient to satisfy the requirements of federal jurisdiction, and whether his allegations of breach of fiduciary duty are a jurisdictional substitute therefor.

Turning to the statutes in question, Sections 77q and 78j, and to Rule 10b–5, it is clear that they are addressed to fraudulent and deceptive practices, and that absent some unusual circumstance, would not normally be deemed to apply to cases where, as here, there seems to have been complete disclosure to and knowledge on the part of the Black Company officers and directors. Therefore, we are confronted with two threshold questions: does the complaint allege a material fraudulent deception, and who must be deceived? If the directors are party to a conflict of interest situation, is the requirement of deception met by allegations of facts constituting deception of the plaintiff stockholder?

The Court finds that the complaint does adequately allege deception of the plaintiff minority stockholder, and adequately alleges a conflict of interest situation as to some or all of those persons through whom the corporation would normally act. Are these allegations, then, sufficient to support federal jurisdiction?

Defendants have cited, and rely on, seven cases standing for the proposition that deception is an element of a 10b–5 claim: O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Condon v. Richardson, 275 F.Supp. 943 (S.D.Ill.1967); Carliner v. Fair Lanes, Inc., 244 F. Supp. 25 (D. Md. 1965); Lester v. Preco Industries, Inc., 282 F. Supp. 459 (S.D.N.Y. 1965); Christophides v. Porco, 289 F. Supp. 403 (S.D.N.Y. 1968); Keers & Company v. American Steel and Pump Corporation, 234 F. Supp. 201 (S.D.N.Y. 1964); Borak v. J. I. Case Co., 317 F.2d 838 (7 Cir. 1963), aff., 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). These cases all stand in support of the proposition that corporate mismanagement or even breach of fiduciary duty by corporate officers and/or directors does not alone suffice for federal jurisdiction unless there is also involved the "deception" which the statute so plainly incorporates. The cases do not precisely meet the question, however, of whether deception of the corporation is possible in the presence of complete disclosure of the facts to the directors, in a situation where the ability of the directors to act in the best interests of the corporation is impaired by a conflict of interest situation involving them. Therefore, these cases do not precisely meet the issue here, which is whether deception is adequately alleged if it is alleged to have been practiced upon the plaintiff minority stockholder, since the facts known to the directors which would dispel deception of them are not attributable to the corporation because of the directors' conflict of interest.

The one case squarely meeting this problem is found among plaintiff's citations. It is Continental Bank & Trust Co. of Salt Lake City v. Garfinkle, 292 F. Supp. 709 (S.D.N.Y. 1968). Another decision reinforcing *Garfinkle* is Penn Mart Realty Company v. Becker, 300 F. Supp. 731 (S.D.N.Y.1969). These decisions, written by District Judge Tyler, fall on both sides of this troubling jurisdictional question; in the first instance denying a motion to dismiss a case brought under Rule 10b–5 and, in the second instance, granting such a motion. The difference between them was that in the *Continental* case, as in the instant case, a conflict of interest situation prevented the knowledge of the directors from being imputed to the corporation.

The *Continental* case is in the vanguard of decisions delineating the area of federal court jurisdiction under federal securities laws, but the reasoning of Judge Tyler has merit, and nothing in the decided cases has foreclosed the jurisdictional area into which *Continental* leads us.

In Schoenbaum v. Firstbrook, 405 F. 2d 215 (2d Cir. 1968), a summary judgment for defendants was appealed and sustained, then after rehearing *en banc* reversed, on an issue analogous to that involved herein. The complaint, a stockholder's derivative action on behalf of Banff Oil Ltd., alleged that Banff sold and defendant Aquitane bought 500,000 shares of Banff treasury stock at $1.35 a share with knowledge of the prospects of successful exploration of a new oil field, a circumstance which later drove the price as high as $18.00 per share.

The Court held that the issuance by Banff of the securities was a sale within the meaning of Section 10 and Rule 10b–5, and that Aquitane engaged in fraud and deceit. The Court acknowledged the allegation that Aquitane controlled Banff and had three men on Banff's eight man board of directors. All the information on the exploration and test well was available to the directors of both corporations. While the case does not in so many words advert to the fiduciary capacity of Banff's board of directors, the point is made by virtue of the Court's different ruling as to another defendant, Paribas, where the dismissal of the complaint below was affirmed for the reason that a similar transaction with defendant Paribas was at arm's length, with no influence or control by Paribas over Banff.

Defendants challenge the application of this, and similar cases, on the grounds that they involved a material

misrepresentation and deception, while the facts of the instant case do not. We turn, therefore, to that issue.

■ We must recognize at the outset that under the facts assumed for the purposes of this motion, plaintiff Bailey must stand in the shoes of the Black Company board of directors, and the fraud and deception, if any, must have been practiced on him and other shareholders similarly situated. In simple statement, the fraud alleged by Bailey is that as the result of the conspiracy described in his complaint, his position was transmuted from a shareholder in a going concern with assets worth $1,-870,000 to a shareholder in a non-operating company with assets worth $440,000. This was done, it is alleged, pursuant to a plan designed to conceal these transactions from Bailey, whom the parties to the alleged conspiracy knew was interested in the transaction, admittedly in his capacity as a prospective purchaser, but also in his capacity as a shareholder who (accepting the allegations of the complaint at face value) was otherwise unprotected by a board of directors who had compromised their status as fiduciaries. These allegations make out a sufficient case of fraud and deception to come within the protection of Section 10(b) and Rule 10b–5.

A further serious question is raised by defendants as to whether the factual allegations of the complaint make out a situation of purchase or sale of securities of the nature contemplated by the federal securities laws. Sections 77q and 78j, and particularly Rule 10b–5 are couched in language which suggests, without explicitly saying, that they are designed for the protection of buyers and sellers in the securities market, as distinguished from buyers of a business with the sale of securities used as a convenient device for the transfer of ownership. Therefore, at first reading, the statutes and rule in question seem amenable to the interpretation defendants put upon them. Defendants rely principally upon Chiodo v. General Waterworks Corp., 380 F.2d 860 (10 Cir.

1967) in support of their position that the sale of a going business through the device of sale of controlling stock is not a sale such as is contemplated by the federal securities laws. In this case, the Court did indeed express doubt that the federal securities laws were intended to apply to a sale of a business effectuated by transfer of stock, but the Court expressly declined to rule on that point. The case, therefore, is not too helpful here.

■ Defendants rely additionally on Manhattan Casualty Co. v. Bankers Life and Casualty Co., CCH Securities Regulation Law Reporter, Section 92,423. The Court in that case was undoubtedly influenced in part by a sketchily drawn complaint from which the allegedly fraudulent scheme did not clearly emerge. But the holding of that Court that the transaction before it involved securities too incidentally to predicate federal jurisdiction thereon does not stand for the general proposition that the transfer of ownership and control of a corporation by means of a transfer of stock is not a stock transaction subject to the federal securities laws. In *Manhattan*, the Court aptly phrased its conclusion to be that Rule 10b–5 requires a fraud in connection with a security transaction rather than the effectuation of a security transaction in connection with a fraudulent activity. The rule thus emerging from the case is that there must be a determination of the degree to which securities were involved in the alleged fraud, federal jurisdiction being absent if the securities transactions were incidental to the fraud or, as in the *Manhattan* case, designed to obscure the true nature of the acquisition and the means of financing it.

■ In the instant case, however else the parties may have accomplished their goals, they chose in fact to trade securities. The form of the transaction necessarily brought into being a buyer and a seller of securities. A transfer of securities ensued. This securities transaction was not merely incidental to the transaction, but was the heart of it. It

was not designed in any way to disguise or obscure the transfer and, finally, it is alleged to be the gist of the purported conspiracy to deceive and defraud. It was, therefore, a sale of securities of such a nature as to come within the ambit of the federal securities laws.

For these foregoing reasons, defendant's motion to dismiss Count I of the complaint for failure to state a federally cognizable cause of action is denied.

## COUNT II

Count II repeats the allegations of Count I, but plaintiff here sues as an individual, rather than derivatively on behalf of the Black Company. Defendant's motion to dismiss Count II is based on the contention that plaintiff has no standing to sue, not being a purchaser or seller under the Act. Plaintiff predicates jurisdiction on 15 U.S.C. Sec. 78aa which embodies the standing to sue question, and additionally on pendant jurisdiction, which would suggest that if Count I has been sustained, Count II may stand alone under the doctrine of pendant jurisdiction.

This question need not be reached, however, since the relief plaintiff seeks is claimed under 15 U.S.C. Secs. 78aa, 78j(b) and Rule 10b–5. Unless plaintiff has standing to sue under those sections, Count II cannot survive as a cause of action either federal or state. The crux of the problem is that the federal jurisdiction over the alleged fraud or deception requires that it must be in connection with the purchase or sale of a security. Count I involved a transfer or sale of Black stock, and the corporation so transferring was derivatively the plaintiff party. In Count II, plaintiff Bailey is the claimant, and he has neither bought nor sold securities. It is the gist of his complaint that he was defrauded of his right to do so, which merely emphasizes that he claims neither to be a purchaser nor a seller.

Birnbaum v. Newport Steel Corporation, 193 F.2d 461 (2d Cir. 1952), and cases following it cited by defendant, do stand for the proposition that stockholders suing derivatively and charging a breach of fiduciary duty in connection with a sale of stock to which they were not a party, have no individual standing to sue as either purchasers or sellers under the act. The question becomes more complex when we add the fact, not present in the *Birnbaum* case, that the plaintiff had a contract to buy. Since the 1934 Act defines sale to include a contract to sell, and purchase to include a contract to purchase, it is necessary to examine whether this broadening of these terms comes to include plaintiff who alleges a contract to buy, the exercise of which was thwarted by a fraudulent conspiracy.

We cannot stray too far from the philosophy that the federal act is designed to regulate and oversee the purchase and sale of securities, and to give a remedy against fraud in connection therewith. The definition of purchase and sale to include contract to purchase or sell cannot be detached or disassociated from the concept of fraud. To create federal jurisdiction, fraud or deception must taint the purchase or sale and, *a fortiori*, must taint the inducement of the contract to purchase or sell. A lack of standing to sue, because neither a purchaser nor a seller, cannot be cured by pleading an earlier contract to purchase in no way induced by fraud, and in no way procured by the persons allegedly guilty of the fraud and deception.

It is true, then, that the *Birnbaum* rule has exceptions, but the facts in the instant case do not bring it within any of these exceptions. Plaintiff in fact was induced neither to purchase nor to sell by fraud or deception; nor was he fraudulently induced to contract to purchase or to sell. As an individual, therefore, he has no standing to sue under the federal securities laws or regulations which Count II is based upon.

Plaintiff argues that the matter is academic since, if Count I pleads a federal cause of action, the Court's jurisdiction over Count II may depend on the federal jurisdiction established under Count I.

The matter is not so simple. Count II does not, as plaintiff suggests, plead a common law wrong. Count II alleges a wrong which depends entirely for its vitality upon the jurisdiction created by Title 15, Section 78j(b). A failure of standing to sue under this statute vitiates the cause of action based thereon. Nothing survives to enjoy the benefit of the doctrine of pendant jurisdiction.

The motion to dismiss Count II of the complaint is, therefore, granted.

## COUNT III

Count III of the complaint alleges a cause of action normally cognizable in the state courts. It is pendant, however, to the federally cognizable cause of action alleged in Count I. The motion to dismiss Count III is denied.