Thomas B. BAILEY, Plaintiff-Appellee,

v.

MEISTER BRAU, INC., Defendant,

and

Continental Illinois National Bank and Trust Company of Chicago, Individually and as Executor of the Estate of James H. Black, Deceased, Defendant-Appellant.

No. 74–1695.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1975.

Decided May 6, 1976.

Rehearings Denied June 21 and July 27, 1976.

George W. Hamman, Chicago, Ill., for defendant-appellant.

Arthur W. Hahn, Norman H. Nachman, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and BAUER, Circuit Judges, and BRYAN, Senior District Judge.*

FREDERICK van PELT BRYAN, District Judge.

Continental Illinois National Bank and Trust Company of Chicago ("Continental") appeals from a judgment of the United States District Court for the Northern District of Illinois, Eastern Division, in the sum of $307,770.78 entered against it individually and as executor of the estate of James H. Black, Sr., deceased. The judgment was entered after trial without a jury before Honorable Richard W. McLaren, J.

The facts in the case are discussed at length in the opinions of the court below,

Bailey v. Meister Brau, Inc., 378 F.Supp. 869 (N.D.Ill.1973) (Bailey I), and 378 F.Supp. 883 (N.D.Ill.1974) (Bailey II), which set forth the court's findings of fact and conclusions of law.[1] The following is a brief summary of the facts which gave rise to the litigation:

In the spring of 1969 plaintiff-appellee Bailey had for some years been president, treasurer, a director, and the principal operating officer of the James H. Black Company ("Black Company"), a manufacturer of salad dressings with its principal place of business in Streator, Illinois. James H. Black, Sr., the founder of the Company and chairman of the board, had died in the fall of 1968. He had been the owner of 57,000 of the 70,000 shares of the Black Company which were held after his death by Continental as his executor. Bailey was the owner of 3,000 shares; the balance of 10,000 shares was owned by Mrs. Harre, whose husband was a director.

In 1966 Bailey had entered into a new employment contract with the Black Company which, in addition to providing a 15-year term of employment, minimum compensation of $30,000 per year, annual bonuses, and life retirement benefits, gave Bailey a 60-day right of first refusal to meet any offer to purchase the majority of the shares of the corporation held by Black, Sr. or his estate.

Continental determined on the advice of Foster, legal counsel, secretary, and a director of Black Company, as well as attorney for the estate and investment adviser to the executor, that the best interests of the estate required liquidation of its Black Company shares and sought offers to purchase them. After Continental had rejected an offer by Bailey to purchase the 57,000 shares held by the estate for $680,000, on April 11, 1969 Meister Brau, Inc offered to purchase the shares of the estate and those of Mrs. Harre for $950,000. This offer was ratified by the Meister Brau board of di-

---

* The Honorable Frederick vP. Bryan, of the Southern District of New York, sitting by designation.

1. Earlier opinions of the district court in the case are reported in Bailey v. Meister Brau, Inc., 320 F.Supp. 539 (N.D.Ill.1970) and 55 F.R.D. 211 (N.D.Ill.1972).

rectors on April 30 and was to remain open until July 8, 1969. Bailey was informed of the offer and in turn advised Continental that he would give notification within the 60-day first refusal period provided in his employment contract that he would meet the terms of the Meister Brau offer.

On May 16, 1970, at the annual meeting of the Black shareholders at which Continental through an officer voted the Black estate controlling shares, a new board of directors was elected which included Cappadocia, a senior vice president of Meister Brau, and did not include Bailey. The new board then elected Cappadocia as chairman, appointed him as president, appointed Berry, the comptroller of the Black Company, as treasurer, removed Bailey from those positions, and reduced his salary to the minimum provided in his employment contract.

On June 6, 1969, well before Bailey's 60-day right of first refusal would have expired and without notice to him, the sale of the estate's and Mrs. Harre's Black Company stock to Meister Brau was closed in the following manner: (1) Meister Brau agreed to indemnify the estate, Continental, and others concerned in the transaction against liability to Bailey because of the accelerated closing date; (2) all of the Black Company assets were transferred to a newly formed Black Products Company of Delaware, Inc. ("Black Products") in exchange for all of the stock of Black Products; (3) all of the shares of Black Products stock were transferred to Meister Brau in exchange for 70,000 shares of Meister Brau stock (unregistered with the Securities and Exchange Commission); (4) Meister Brau purchased all of the 67,000 shares of Black Company stock held by the estate and Mrs. Harre for $950,000; (5) the Black Company agreed to indemnify Meister Brau for liability or loss arising out of its acquisition of the Black Company shares; and (6) Meister Brau agreed not to sell, pledge, or mortgage any Black Company assets (which now consisted solely of Meister Brau stock) as long as it remained indebted to Continental as executor on a note given in partial payment for the Black Company stock.

Bailey, who had remained as principal operating officer of the Black Company subsequent to his demotion as president, treasurer, and director on April 16, was then discharged "for cause" by the Black Company acting through Cappadocia as its president.

On June 9, 1969 Bailey, who had arranged financing of the purchase of the Black Company shares, advised Continental that he had elected to match the terms of the Meister Brau offer, and tendered a cashier's check for $25,000 on account. Continental advised Bailey that the estate had already sold its stock to Meister Brau, but refused to discuss the terms of sale. Meister Brau then offered to sell its Black Company stock to Bailey for $950,000, but advised him that the Black Company's only assets were the unregistered Meister Brau stock. Bailey rejected the offer.

Bailey then commenced the present action, naming as defendants Continental, individually and as executor of the Black estate; Foster; Meister Brau, Inc.; Mullen and Schaeffer, officers of Continental who had represented Continental in the transactions at issue; Cappadocia; Mr. and Mrs. Harre; James H. Black, Jr., and Mrs. Black, Sr., heirs of the Black estate; Berry, the new treasurer of the Black Company; and the Black Company.

The complaint set forth three claims for relief. Count I, a derivative claim brought by Bailey as minority stockholder of the Black Company, alleged that the defendants had defrauded the Black Company by exchanging all the Black Company assets for the much less valuable unregistered Meister Brau stock in violation of SEC Rule 10b–5,[2] Section 10(b) of the Securities Exchange Act of 1934,[3] and Section 17(a) of the Securities Act of 1933.[4] It sought rescission or damages in favor of the Black Company, the nominal defendant.

---

**2.** 17 C.F.R. § 240.10b–5.

**3.** 15 U.S.C. § 78j(b).

**4.** 15 U.S.C. § 77q(a).

Count II alleged a similar claim for relief, on behalf of Bailey individually.

Count III, a pendent claim for relief on behalf of Bailey individually, alleged that defendants had conspired to commit and committed the common law tort of intentional interference with Bailey's contractual right of first refusal and sought damages therefor.

Judge McLaren, in *Bailey I,* made findings of fact after trial which will be referred to in some detail later. On the derivative count I, he concluded that Continental and Foster had violated Rule 10b–5 and were liable to the Black Company therefor. However, he refused to award damages on that count.

Count II of the complaint was dismissed and no appeal has been taken from that dismissal.

On count III of the complaint, Judge McLaren concluded that Foster and Continental, individually and as executor, acted in concert with Meister Brau and intentionally interfered with and induced a breach of Bailey's contractual right of first refusal to purchase the Black Company shares. He found that Bailey had been damaged in the sum of $214,336.20 and that Continental and Foster were liable to Bailey in that amount.[5]

In a supplementary opinion, *Bailey II,* the court determined that Bailey was entitled to $50,000 in attorneys' fees and $27,339.90 in expenses of litigation against Continental and Foster on Count I. It also awarded Bailey $19,094.68 as costs.

Foster settled with Bailey prior to the entry of judgment. Judgment against Continental was duly entered.

On this appeal Continental does not challenge the findings of fact made by the court below. With respect to count I, it contends (a) that upon the facts in the record it is not liable to the Black Company as a matter of law, and (b) that, in any event, the court below was in error in awarding attorneys' fees and expenses of litigation to Bailey on that count.

As to count III, Continental contends that as a matter of law it is not liable to Bailey for inducing breach of contract, either individually or as executor, and that, in any event, the damages awarded were incorrectly computed and excessive. Finally, it contends the court below was in error in its computation of taxable costs.

### Count III

Since the major portion of the liability imposed on Continental by the judgment below is based on count III of the complaint, we first deal with that count.

Continental does not question (1) that, under the terms of his 1966 employment contract, Bailey had a 60-day right of first refusal of Meister Brau's offer to purchase the shares of the Black Company held by the Black, Sr. estate; (2) that the sale of the Black estate stock to Meister Brau on June 6, 1969 without Bailey's knowledge or consent destroyed his contractual right of first refusal; and (3) that Continental, through its officers Schaeffer and Mullen, with full knowledge of Bailey's contract rights and induced by Meister Brau's offer of indemnity acted in concert with Meister Brau and Foster and brought about the destruction of Bailey's right of refusal.

The findings of the court below to this effect are supported by the evidence. On the basis of these findings, the court concluded that Continental and Foster had

> combined with Meister Brau to unlawfully interfere with Bailey's right of first refusal and are therefore liable to him

---

5. Bailey had dismissed his claims against Mrs. Harre, Mr. Harre and Berry before trial. Meister Brau, Inc. was severed from the case prior to trial because of an order in a proceeding under Chapter XI of the Bankruptcy Act enjoining suits against it. Meister Brau, Inc. was adjudicated a bankrupt on February 15, 1973.

The court found defendants Cappadocia, Schaeffer, Mullen, Mrs. Black and Black, Jr. not liable on any of the counts and dismissed as to them. Bailey did not appeal from that dismissal.

jointly and severally for the consequences of their tortious acts.

*Bailey I, supra,* at 880.[6]

Continental takes the position that it cannot, as a matter of law, be held liable for the tort of inducing breach of contract on the basis of these findings for several reasons.

### A.

Continental's principal contention is that Bailey had engaged in a course of conduct which constituted such a serious breach of his employment contract with the Black Company that it justified Continental and its collaborators in denying him the right of first refusal which that contract provided.

The court below found that Bailey's conduct did not

> constitute a breach of his employment agreement (even assuming that such a breach would terminate his right of first refusal) or provide justification for interference with his contractual rights.

*Bailey I, supra,* at 879. Continental argues that the district court's holding to this effect was erroneous as a matter of law.

We see no merit in this contention. Quite understandably, friction developed between Bailey and Meister Brau, particularly after Cappadocia, Meister Brau's designee, displaced him as president of the Black Company. As the court below pointed out, the situation at the plant was tense between May 16, 1969, when the displacement occurred, and June 6, 1969, when Meister Brau's purchase was consummated and Bailey was discharged. It was accentuated by Cappadocia's action in taking Bailey's credit cards and company car keys away from him and in not assigning him any work.

During this period, Bailey was making continuing efforts to meet the Meister Brau offer, as he had a right to do, and expected to be able to acquire the Black estate stock and control the Company himself. He certainly cannot be criticized for informing employees and prospective purchasers that this was what he intended to do.

Plainly, as the pressures increased Bailey indulged in some unwise and loose talk as to what he might do if he were unable to obtain control of the Black Company. But, as the court below pointed out, though Bailey's conduct may not have been without fault, "it was no worse than might be expected of any person in that situation. . ." *Bailey I, supra,* at 879.

There was no showing that any harm was done to the Black Company by Bailey's conduct. Moreover, much of Bailey's conduct, which Continental attacks, was not known to Continental until after it had chosen to accept the accelerated Meister Brau offer.

■ The question of whether an interference with contractual rights is justified is basically a question of fact which is resolved by inquiring into the "good faith" of the party inducing the breach of contract. *See American Surety Co. v. Schottenbauer,* 257 F.2d 6, 12–13 (8th Cir. 1958); *Mellor v. Budget Advisors, Inc., supra,* at 1221. The court below made such an inquiry and carefully considered the evidence as to both Bailey's and the Bank's conduct, including their own explanations of what had occurred. Its finding that Bailey's conduct did not constitute a breach of his employment contract or justify Continental's interference with his contractual rights is supported by the evidence and cannot be said

6. The court set forth the well-established elements of this tort of intentional interference with contractual relations or inducing breach of contract, as follows:

(1) the defendants' knowledge of the contract between plaintiff and the third party, (2) defendants' unjustified inducement of the third party to breach or otherwise render impossible the performance of the contract, (3) the subsequent breach or other such act by the third party, and (4) damage to plaintiff. See *e. g., Mellor v. Budget Advisors, Inc.,* 415 F.2d 1218, 1221 (7th Cir. 1969); *Republic Gear Co. v. Borg-Warner Corp.,* 406 F.2d 57, 61 (7th Cir.), *cert. denied,* 394 U.S. 1000, 89 S.Ct. 1596, 22 L.Ed.2d 777 (1969); *General Capital Corp. v. U. S. Family Sporting Goods, Inc.,* 351 F.Supp. 364, 367 (N.D.Ill. 1972).

*Bailey I, supra,* at 877.

to be erroneous. The court below was not in error in rejecting Continental's defense of justification.

### B.

■ Continental next contends that it was error to enter judgment on count III against it both individually and as executor of the Black estate on the ground that it cannot be held liable in its individual corporate capacity for a tort committed in its capacity as executor. It is well settled that the law is otherwise:

> The trustee is subject to personal liability to third persons for torts committed in the course of the administration of the trust to the same extent that he would be liable if he held the property free of trust.

Restatement of the Law, Second, Trusts, § 264 (1959). *See also* 3 A. Scott, The Law of Trusts, § 264 (3d ed. 1967); G. Bogert, The Law of Trusts and Trustees, § 731 (2d ed. 1960); *Piff v. Berresheim,* 405 Ill. 617, 92 N.E.2d 113, 117 (1950); *Schmidt v. Kellner,* 307 Ill. 331, 138 N.E. 604, 606 (1923).

### C.

On count III the court below found that Continental had combined with Foster and Meister Brau to interfere intentionally with and destroy Bailey's contractual right of first refusal, and held it was therefore liable to Bailey for the damages suffered as a consequence of its tortious acts.

As we have indicated, Continental does not challenge the court's finding of fact. Nevertheless, it contends that as executor of the Black Sr. estate it was a party to the contract with Bailey which granted him the right of first refusal and that, under Illinois law, a party to a contract may not be held liable in tort to another contracting party for combining with third parties to bring about a breach of that contract.

In such circumstances, Continental argues, the only remedy which the injured party has against the other party to the

contract in Illinois is a claim for breach of contract, which Bailey never asserted. It urges that recovery on a tort theory in this case is impermissible, and that the judgment against Continental on count III must therefore be reversed.

Bailey was granted the right of first refusal under his employment contract with the Black Company, entered into on July 1, 1966. The contract was executed by James H. Black, Sr. on behalf of the Black Company, as chairman of the board, and by Bailey on his own behalf. The first refusal clause provided that

> [T]he sellers of the majority of the shares of the common stock of the Company (whether Black or his estate or heirs) shall give to Bailey a sixty (60) day right of first refusal to meet any offer to purchase such shares. Notice to Bailey shall be in writing, postage prepaid, certified or registered mail, and shall contain a bona fide copy of the offer which must be in writing.

Black, Sr. did not sign the contract in his individual capacity, nor did anyone do so on his behalf. The court below held that the right of first refusal clause was valid and enforceable and Continental does not challenge that holding.[7]

■ The court below rejected Continental's contention that under Illinois law a party to a contract may not be held liable to another contracting party for combining with others to induce a breach. It held that even if Continental were considered a party to the contract granting the right of first refusal, it was liable in tort since it had conspired with others to bring the breach. In our view this holding was correct.

State jurisdictions are in disagreement as to whether one contracting party may recover against another for conspiring with third persons to breach the contract. Some jurisdictions hold that the only remedy the injured contracting party has under such circumstances is for breach of contract. In

---

7. The court below cited *Frank Rosenberg, Inc. v. Carson Pirie Scott & Co.,* 28 Ill.2d 573, 583–584, 192 N.E.2d 823, 829 (1963), and *Ramsay*

*Realty Co. v. Ramsay,* 135 Iowa 612, 113 N.W. 468, 469 (1907), in support of that holding.

other jurisdictions a party to a contract who conspires with others to breach the contract is liable to the other contracting party in tort for so doing. *See* 16 Am.Jur.2d *Conspiracy* § 50, at 152–53 (1964); 15A C.J.S. *Conspiracy* § 13, at 640 (1967); and cases there cited.

Illinois authority on this question takes the latter view, to the effect that a party to a contract is liable to another contracting party in damages for conspiring with others to bring about a breach of the contract.

In *Blivas and Page, Inc. v. Klein*, 5 Ill. App.3d 280, 282 N.E.2d 210 (1972), defendants Klein and Page appealed from a judgment entered on a jury verdict based on a single count alleging breach of an oral agreement by Klein to retain plaintiff's architectural firm on a housing project, wrongful inducement of the breach by Kay, and conspiracy between Klein and Kay to induce the breach. The Appellate Court of Illinois in affirming the judgment against both defendants insofar as it awarded actual damages to the plaintiff stated:

> While it is true that a party cannot be sued in tort for inducing the breach of his own contract, he can be sued for conspiracy with a third person who has induced him to breach his contract resulting in actual damage.

282 N.E. at 214.

Cases in the federal courts applying Illinois law support the *Blivas* position, *National Gas Appliance Corp. v. Manitowoc Co.*, 311 F.2d 896 (7th Cir. 1962); *Burton v. Hitachi America, Ltd.*, 504 F.2d 721 (7th Cir. 1974), which is in accord with the view of well reasoned decisions in other jurisdictions. *See, e. g., Wade v. Culp*, 107 Ind. App. 503, 23 N.E.2d 615 (1939) (en banc); *Falstaff Brewing Corp. v. Iowa Fruit & Produce Co.*, 112 F.2d 101 (8th Cir. 1940); *Wise v. Southern Pacific Co.*, 223 Cal. App.2d 50, 35 Cal.Rptr. 652 (1963); *Luke v. Dupree*, 158 Ga. 590, 124 S.E. 13 (1924).[8]

Even were Illinois law otherwise, Continental cannot escape liability for combining with others to breach Bailey's right of first refusal under the facts in this case. The agreement granting that right was between the Black Company and Bailey and was enforceable against the Black estate, which held the controlling shares to be offered. As the court below pointed out, Continental "was not a party to the agreement in the normal sense. The estate, not the Bank, is named in the right of first refusal." *Bailey I, supra*, at 878.

■ Through its officers, Continental played an active part in bringing about the breach of Bailey's first refusal right and received inducement from Meister Brau in the form of indemnification against liability for its part in the transaction. Having thus actively participated in bringing about a breach of a provision of a contract between Bailey, the Black Company, and the Black estate—to which it was not a party—Continental was liable to Bailey for the tort of unlawfully interfering with his contractual rights. *Cf. General Capital Corp. v. U. S. Family Sporting Goods, Inc., supra.*

### D.

The Court below awarded Bailey damages of $214,336.20 on count III. Continental challenges the amount of damages awarded on several grounds.

The damages awarded consisted of (1) the value of the interest in the Black Company which Bailey would have acquired had he not been prevented from exercising his right of first refusal, less the cost to Bailey of acquiring such interest; (2) the present discounted worth of the wages, bonuses, and pension rights which Bailey would have been entitled to receive from the Black Company under his contract of employment, less the present discounted worth of amounts receivable from his subsequent employment by another corporation in mitigation of damages; (3) the present discounted worth of loss of fees from an outside directorship which Bailey would have

---

8. Continental's reliance on *Worrick v. Flora*, 133 Ill.App.2d 755, 272 N.E.2d 708 (1971), is misplaced. That case did not involve the question of whether a party to a contract is liable for conspiring with an outside third party to induce its breach. It is not apposite here.

earned as a result of his control of and position with the Black Company; and (4) incidental damage and expense resulting from his severance from the Black Company and the necessity to accept comparable employment elsewhere.

■ We have examined the calculations of damages made by the court below. *Bailey I, supra,* at 880–82. We find that these calculations are reasonable, are supported by the evidence in the record, and cannot be said to be in error.

The court below awarded damages of $103,207.20 as the value of the interest in the Black Company which Bailey would have acquired had he not been deprived of the opportunity to purchase the 57,000 shares held by the Black estate and the 10,000 shares of Mrs. Harre.[9] In arriving at this figure, the court fixed the value of the entire company at $1,097,009. It then deducted $968,000, which would have been the cost to Bailey of acquiring the shares of the Black estate and Mrs. Harre at $950,000, plus the $18,000 cost of the remaining 3,000 shares which Bailey already held. Under the financing arrangements which Bailey had made to meet the Meister Brau offer, all of the Black Company stock was to be held by a new corporation in which Bailey was to have an 80% stock interest. The court therefore calculated this element of damage as 80% of the difference between the value of the entire Black Company and the amount which it would have cost Bailey to acquire 100% of its capital stock, arriving at the $103,207.20 figure.

Continental does not seriously challenge the formula on which the court below based these calculations. Nor does it question the court's finding that the consideration given by Meister Brau for the Black Company stock after negotiation was the best evidence of its value. Continental questions only the finding as to the amount of such consideration.

The court below found that the cost to Meister Brau of the 95.7% of the Black Company stock which it purchased from the Black estate and Mrs. Harre was $1,050,000. This figure represented the sum of $950,000 actually paid by Meister Brau plus $100,000 as the value of the indemnity provided by Meister Brau to the estate, Continental, Foster, Schaeffer and Mr. and Mrs. Harre for closing the transaction. By providing such indemnity, Meister Brau in effect assumed a substantial liability of the sellers and this was additional consideration for the purchase. Meister Brau had calculated its maximum exposure under the indemnity to be $180,000. The court below appropriately discounted that figure and found that the value of this additional consideration for the purchase was $100,000.

■ Continental contends that the $100,000 indemnity figure should not have been included in the calculation of the purchase price because it was made necessary by Bailey's own conduct and was not a part of the negotiated and agreed upon price. Continental's argument misses the mark.

The indemnification agreement was not made necessary by Bailey's own conduct, as we have already indicated. It was necessitated by Meister Brau's determination to acquire the Black Company in unlawful disregard of Bailey's known right of first refusal, and was plainly a part of the consideration which the sellers required Meister Brau to pay for the Black Company shares. The value of the additional consideration provided by the indemnity agreement, as found by the court, was not arbitrary, as Continental claims, but was reasonable and supported by the record.

Continental's other arguments as to count III damages require little discussion.

Contrary to Continental's contention, Bailey's loss of wages, bonuses, and pensions payable under his contract with the Black Company, as well as his loss of fees from an outside directorship was a direct conse-

---

**9.** As was pointed out below, *Bailey I, supra,* at 880, both parties proceeded on the assumption at trial and in their proposed findings and conclusions that Mrs. Harre would have sold her shares to Bailey had he been able to meet the Meister Brau offer as to the estate's shares. The court calculated damage upon that assumption, which was plainly correct.

quence of the actions of the defendants which deprived him of his opportunity to obtain control of the Black Company. The suggestion that but for plaintiff's own conduct he would have continued as operating head of the Company at an increased salary has no support in the record and is contrary to the facts found by the trial court.

The figure that the court allowed for lost bonuses was supported by projections of the Black Company operations for the years 1970–1975 made by Berry, the Black Company comptroller who became treasurer, and Bailey himself. Those projections stand unrefuted on the record.

 While the trier of fact may not award damages on the basis of mere speculation or guesswork, even where, as here, the defendant's own wrong has prevented a more precise computation, it may make a just and reasonable estimate of the damage based on the relevant data presented at trial and render its decision accordingly. *See Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652, 660 (1946); *Dasho v. Susquehanna Corp.,* 461 F.2d 11, 28 (7th Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972).

That is what was done. The court below had wide latitude in fixing damages. *Harry Alter Co. v. Chrysler Corp.,* 285 F.2d 903, 907 (7th Cir. 1960). Its determinations did not have to be based on mathematical certainties, as the court below recognized. *Bailey I, supra,* at 882 n. 12. The determination of damages here justly and reasonably approximated the damages suffered and was based on relevant evidence and data in the record. No reason has been shown for disturbing the award of damages on count III.

### Count I

Count I of the complaint, the derivative claim on behalf of the Black Company asserted by Bailey as a minority stockholder, is based on a phase of the complicated transactions by which Meister Brau acquired the Black Company stock held by the Black, Sr. estate and Mrs. Harre, in violation of Bailey's right of first refusal. It is separate and distinct from Bailey's individual count III claim for tortious interference with his contractual right of first refusal, and stands on its own feet.

As part of these transactions, all of the assets of the Black Company were transferred to a newly formed corporation, the Black Products Company, in exchange for all of the Black Products Company's stock. The Black Products stock was then transferred from the Black Company to Meister Brau in exchange for the transfer to the Black Company of 70,000 shares of Meister Brau stock, which were unregistered with the SEC. Meister Brau, in turn, purchased the shares of the Black Company held by the Black, Sr. estate and Mrs. Harre, amounting to 67,000 of the 70,000 shares outstanding, for $950,000. Bailey remained the owner of 3,000 shares of the stock of the Black Company, the only assets of which then consisted of the 70,000 shares of unregistered Meister Brau stock.

Count I charged that the 70,000 shares of unregistered Meister Brau stock which were transferred to the Black Company in exchange for all of its assets were worth less than half of the value of the Black Company assets transferred in return, and that Continental, in combination with Meister Brau and the Black Company directors, had defrauded the Black Company by causing this exchange to be made in violation of SEC Rule 10b–5,[10] Section 10(b) of the Securities Exchange Act of 1934,[11] and Section 17(a) of the Securities Act of 1933.[12]

The court below found that the conduct of Continental with respect to the transaction by the Black Company for the exchange of Meister Brau stock was in violation of Rule 10b–5[13] and held that Conti-

10. 17 C.F.R. § 240.10b–5.

11. 15 U.S.C. § 78j(b).

12. 15 U.S.C. § 77q(a).

13. The court below concerned itself only with the Rule 10b–5 claim, having concluded that proof of a violation of the Rule would also amount to proof of violations of the two statutes on which plaintiff relied.

nental was liable to the Black Company therefor. The court determined, however, that no damages should be awarded to the Black Company against Continental, reasoning (1) that it would be unfair to award full damages to the Black Company because

> Meister Brau, which is the prime beneficiary of the wrong and has already benefited from the Black Company's loss by acquiring its assets at a bargain price, would receive the principal benefit of such damages as the majority shareholder of the company.

and would be unjustly enriched, and (2) that "[a]s Bailey recognizes, his damages under Count III are duplicative of his pro rata share of the damage to the Black Company under Count I." *Bailey I, supra,* at 877.

The holding that Continental was liable on count I but that no damages would be awarded has significance largely because it was the basis for an additional holding that Bailey, as the minority stockholder who brought suit on behalf of the Black Company, was entitled to an award of attorneys' fees and litigation expenses against Continental for pressing the derivative claim. *Bailey I, supra,* at 882. The court accordingly awarded Bailey $50,000 in attorneys' fees and $27,339 in litigation expenses against Continental on Count I. *Bailey II, supra.*

Continental contends that the judgment against it on count I, holding it liable to the Black Company and awarding Bailey attorneys' fees and expenses, should be reversed on two grounds. It urges, first, that as a matter of law it was not liable to the Black Company on count I and, second, that, in any event, the court was without authority to award attorneys' fees and litigation expenses to Bailey and was in error in so doing.

### A.

The evidence at the trial, viewed, as it must be, in the light most favorable to the appellee, supports the conclusion that Continental was liable to the Black Company for violation of Rule 10b–5.

There is no question that the transactions by which the Black Company ultimately acquired the unregistered Meister Brau stock in return for all of its assets constituted a purchase and sale of securities under Rule 10b–5.

The evidence was that the 70,000 unregistered Meister Brau shares received by the Black Company were worth only half of what their value would have been had they been registered, and far less than the value of the Black Company assets for which they were ultimately transferred. The transaction was manifestly unfair to the Black Company and its minority stockholder Bailey, as the court below found.

Continental as executor held the 57,000 of the 70,000 shares of the Black Company owned by the Black, Sr. estate, and was thus the controlling stockholder of the Black Company. It also effectively controlled the 10,000 Black Company shares held by Mrs. Harre, which gave it 95.7% control of the Black Company.

In combination with Meister Brau and the Black Company board of directors, which it and Meister Brau controlled, Conti-

---

Rule 10b–5, 17 C.F.R. § 240.10b–5, reads as follows:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

nental precipitated the transactions by which the Black Company assets were exchanged for the unregistered Meister Brau stock.

The Bank was primarily concerned with consummating the sale of the Black Company stock to Meister Brau at the favorable agreed upon price. The transactions by which it undertook to effectuate that sale resulted in the exchange of the Black Company assets for the unregistered Meister Brau stock. There was a clear conflict of interest between Continental's fiduciary duty as controlling shareholder to the Black Company and its minority shareholder Bailey and its objective of effecting the sale of the Black estate shares to Meister Brau.

There was no reason why Continental, through its participating officers and the Black Company directors which it controlled, should not have been fully aware that the unregistered Meister Brau stock was worth much less than the Black Company assets for which it was exchanged. While there was no direct evidence that Continental had such knowledge, the court below found that, at the least, Continental and its participating officers and controlled directors

> were grossly negligent in failing to recognize the unfairness of the asset transfer.

and

> blinded by a conflict of interest, wantonly ignore[d] evidence of the unfairness of [the] securities transaction to the corporation and therefore fail[ed] to disclose this evidence to those shareholders whose interests lie with the corporation.

*Bailey I, supra,* at 876. *Cf. Sanders v. John Nuveen & Co., Inc.,* 524 F.2d 1064, 1069 (7th Cir. 1975).

Bailey, the 3,000-share minority stockholder of the Black Company, was the only stockholder whose interests lay with the corporate entity. While he knew of Meister Brau's offer to acquire the Black estate stock, he was wholly unaware of the transactions by which the Meister Brau shares were acquired by the Black Company and did not learn what had occurred until well after the transaction had been fully effectuated. There was a complete failure to disclose to him, as minority shareholder, that such a deal was to be carried out. He was thus deprived of any opportunity to protect the interests of the corporation and of himself as minority shareholder.

The controlling stockholder of a corporation owes the corporation a fiduciary obligation designed for the protection of the entire community of interests in the corporation, including the interests of the other stockholders. *Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281, 289 (1939); *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128, 134 (1971). Where the controlling stockholder causes the corporation to engage in a securities transaction in which the stockholder has a conflict of interest, it has the obligation to disclose to the other stockholders information in its possession which reflects on the fairness of the transaction. If the controlling stockholder fails to make such disclosure and the transaction was unfair to the corporation and the other stockholders, such conduct violates Rule 10b–5 and the controlling stockholder is liable for the loss incurred. *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Penn Mart Realty Co. v. Becker,* 300 F.Supp. 731 (S.D.N.Y.1969); *Continental Bank & Trust Co. v. Garfinkle,* 292 F.Supp. 709 (S.D.N.Y.1968). *See* 2 A. Bromberg, Securities Law: Fraud, § 8.4 (1971).

The court below properly applied this reasoning to the facts in the case at bar. Here, Continental, as controlling stockholder of the Black Company, caused the Company to engage in the transaction whereby the Black Company assets were exchanged for Meister Brau stock. The transaction was manifestly unfair to the Black Company since the Meister Brau stock was worth far less than the assets transferred. Continental, "blinded by conflict of interest," wantonly ignored evidence of the unfairness of the transaction which

was readily available, and failed to disclose the facts to the other stockholders. In so doing, it violated Rule 10b–5 and was liable to the Black Company for the loss.[14]

Continental's contention, based on such cases as *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952) and *O'Neill v. Maytag*, 339 F.2d 764 (2d Cir. 1964), that Rule 10b–5 does not provide a claim for relief in a derivative stockholder suit alleging breach of fiduciary duties by controlling stockholders or directors of a corporation, is patently incorrect. Any implication that might have been drawn from these cases that Rule 10b–5 cannot reach a breach of fiduciary duty by controlling stockholders or directors and that the only remedy lies under state law, has been repudiated in later cases. Rule 10b–5 is promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934 which

> must be read flexibly, not technically and restrictively. Since there was a "sale" of a security and since fraud was used "in connection with" it, there is redress under § 10(b), whatever might be available as a remedy under state law.

*Superintendent of Insurance v. Bankers Life & Casualty Co.*, supra, 404 U.S. at 12, 92 S.Ct. at 169, 30 L.Ed.2d at 134. *See A. T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir. 1967); *Schoenbaum v. Firstbrook*, supra; *Popkin v. Bishop*, 464 F.2d 714, 718 (2d Cir. 1972); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Dasho v. Susquehanna Corp.*, 380 F.2d 262, 270 (7th Cir.) (Fairchild, J., concurring), *cert. denied*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967).

The court below was correct in holding that Continental was liable to the Black Company on the derivative claim for relief alleged in count I of the complaint. *Cf. Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir. 1976); *Marshel v. AFW Fabric Corp.*, 533 F.2d 1277 (2d Cir. 1975) and cases there cited.

### B.

Characterizing the case as "an exceptional situation in which an award is within its discretion," *Bailey I, supra*, at 882, the court below awarded Bailey $50,000 in attorney's fees and $27,339.90 in litigation expenses against Continental on count I. *Bailey II, supra*.[15] The court stated:

> The policy of the securities laws has been enforced and but for the considerations above [namely, that "[b]ecause of duplication of Bailey's Count III damages and the inequity of any award to Meister Brau, no damages have been assessed under Count I"], a fund would have been created from which such an award could be made. The effect of such an award upon defendants will be no different than if full damages had been allowed to the company; in either event it is payable by defendants.

*Bailey I, supra*, at 882. We disagree with the reasoning of the court below and hold that it was without authority to make these awards.

■ The general American rule is that, absent a specific statutory authorization,[16] attorneys' fees are not recoverable by the winning party to a lawsuit. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475, 478 (1967).

---

**14.** There is nothing to the contrary in *Ernst & Ernst v. Hochfelder*, —— U.S. ——, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (U.S. March 30, 1976). *See* —— U.S. at ——, 96 S.Ct. at 1381, 47 L.Ed.2d at 677, 44 U.S.L.W. at 4454 n. 12.

**15.** The judgment entered reduced the litigation expenses awarded to $24,339.90.

**16.** While statutory provisions by which a plaintiff may recover attorneys' fees appear in several sections of the federal securities laws, *see, e. g.*, Securities Act of 1933, § 11(e), 15 U.S.C. § 77k(e); Securities Exchange Act of 1934, §§ 9(e), 18(a), 15 U.S.C. §§ 78i(e), 78r(a), they are inapplicable to 10b–5 actions. 2 A. Bromberg, *supra*, § 9.3, at 232.1 n. 26 (1971).

However, it is well settled that the counsel fees and litigation expenses incurred by a minority stockholder in vindicating a corporate claim for relief can be assessed against all the shareholders substantially benefited by means of an award against the corporation. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389–94, 90 S.Ct. 616, 624–626, 24 L.Ed.2d 593, 604–607 (1970); *Walker v. Columbia Broadcasting System, Inc.*, 443 F.2d 33, 36 (7th Cir. 1971). The rationale is that "the plaintiff's efforts have conferred on the corporation a benefit for which the corporation would otherwise have had to pay itself," *Jones v. Uris Sales Corp.*, 373 F.2d 644, 648 (2d Cir. 1967), and that fairness requires that the plaintiff be reimbursed for the necessary expenses of conferring that benefit out of the funds recovered.

It is clear that this obligation to reimburse a shareholder who brings a successful derivative suit is an obligation of the corporation, and not an obligation of the losing party to the suit. *Levine v. Bradlee*, 378 F.2d 620, 622 (3d Cir. 1967); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1199 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700, 43 U.S.L.W. 3675 (1975), and cases there cited; 7A C. Wright and A. Miller, Federal Practice and Procedure, § 1841, at 444 (1972). Counsel fees may not be awarded in derivative actions where they would effectively cast the litigation expenses of the prevailing party on a losing adversary. *Jones v. Uris Sales Corp., supra*, at 648; Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L. Rev. 849, 859 (1975).

The court below observed that there were no reported decisions on the question of whether attorneys' fees and expenses could be awarded against the losing party under the circumstances of this case. As has been indicated, it relied largely on the fact that the public policy of the securities laws had been enforced.

It is true that at the time of the decision below there was a trend toward extending the award of attorneys' fees and expenses in public interest litigation generally, and in stockholders' derivative suits as affected by the public interest in particular. *See Dawson, supra*, at 854, *passim*, and cases there cited.

The recent decision of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society, supra*, has effectively halted that trend. There, attorneys' fees had been awarded to the plaintiff environmental groups against the defendant Alyeska Pipeline Service Company under the court's equitable powers on the theory that the groups were performing the services of "private attorneys general" by suing to enforce federal legislation.

The Supreme Court reversed the award on the ground that any sweeping change in the American rule that a prevailing litigant is not entitled to collect a reasonable attorneys' fee from the loser must be made by the legislature and not by the courts. It stated:

> Courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

421 U.S. at 269, 95 S.Ct. at 1627, 44 L.Ed.2d at 159.

The stockholders derivative suit exception to the American rule under which attorneys' fees and expenses may be awarded to the successful shareholder against the recovering corporation retains vitality after *Alyeska. See* 421 U.S. at 257–258, 95 S.Ct. at 1621–1622, 44 L.Ed.2d at 153–154. But in the light of *Alyeska*, we cannot extend that exception to sustain the award of fees and expenses to the successful shareholder against the losing party on the basis that "[t]he policy of the securities laws has been enforced." This is now an impermissible basis for the award of fees and expenses against Continental as the losing party

here.[17] *See Ernst & Ernst v. Hochfelder, supra,* at ——, 96 S.Ct. at 1389, 47 L.Ed.2d at 687, at 4459 n. 30.

Nor is this the exceptional case where the court has the power to assess attorneys' fees against a losing party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ." *Alyeska, supra,* 421 U.S. at 258–59, 95 S.Ct. at 1622, 44 L.Ed.2d at 154, quoting *F. D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 713 (1974). The court below made no such finding. Instead, the court below found that there was no evidence that Continental actually knew that the Meister Brau stock was worth less than the Black Company assets for which it was exchanged, though it was grossly negligent in not being aware of that fact. This is quite different from the exceptional situation referred to in *Alyeska,* or that described in *Kahan v. Rosenstiel,* 424 F.2d 161, 167 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), cited by the court below, "where the behavior of a litigant has reflected a willful and persistent 'defiance of the law'." *Cf. Walker v. Columbia Broadcasting System, Inc., supra,* at 37–38; *Scotch Whisky Ass'n v. Barton Distilling Co.,* 489 F.2d 809, 813–14 (7th Cir. 1973).

We hold that the court below was without authority to award attorneys' fees and litigation expenses against Continental on count I and was in error in so doing.

### Costs

Continental's final contention is that a costs item of $3,356.57 for depositions taken for discovery purposes should not have been taxed. That contention is without merit.

■ The court below found that this expense was reasonably necessary and should be taxed; it was well within its discretion in so finding. *See Federal Savings and Loan Insurance Corp. v. Szarabajka,* 330 F.Supp. 1202, 1210 (N.D.Ill.1971); *Perlman v. Feldmann,* 116 F.Supp. 102, 110–111 (D.Conn.1953), *rev'd on other grounds,* 219 F.2d 173 (2d Cir.), *cert. denied,* 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955); *Electronic Specialty Co. v. International Controls Corp.,* 47 F.R.D. 158, 162 (S.D.N.Y.1969); 6 J. Moore, *Federal Practice* ¶ 54.77[4], at 1720–21 (2d Ed. 1975).

The judgment appealed from insofar as it awards attorneys' fees of $50,000 and litigation expenses of $24,339.90 to plaintiff Bailey is reversed, and in all other respects is affirmed.

SWYGERT, Circuit Judge (dissenting in part).

The district court refrained from assessing damages against Continental under count I even though the bank was found liable to Black Company on a derivative claim for relief. It based its decision on the equitable doctrine of unjust enrichment. The court held that had Meister Brau not been guilty of unlawful acts damages would have been awarded. Thus, a fund would have been created for the benefit of Black Company and plaintiff would have been entitled to reasonable attorneys' fees from that fund.

The majority concedes the law is well settled in this general area; a shareholder may be reimbursed for attorneys' fees and litigation expenses when he has vindicated a corporate claim for relief that substantially benefits all the shareholders. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389–97, 90 S.Ct. 616, 624–628, 24 L.Ed.2d 593, 604–609 (1970). Nonetheless, the majority maintains that the obligation to compensate a shareholder in a successful derivative suit is an obligation of the corporation and can-

---

17. Several pre-*Alyeska* decisions kept the derivative suit exception within these confines. *See Ramey v. Cincinnati Enquirer, Inc., supra,* at 1198–1200, and cases there cited; *Jones v. Uris Sales Corp., supra,* at 648. Moreover, this circuit, in a slightly different context, has recognized that *Alyeska* has circumscribed the

bases on which attorneys' fees may now be awarded. *See Satoskar v. Indiana Real Estate Commission,* 517 F.2d 696 (7th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). *See* also *Wallace v. House,* 515 F.2d 619, 636–37 (5th Cir. 1975).

not be passed on to the losing party to a suit. The majority concludes that, accordingly, the general American rule is applicable—attorneys' fees are not recoverable by the winning party to a lawsuit absent specific statutory authorization.

I disagree. The majority employs a formalistic approach to its analysis which obscures the purpose of the rule enunciated in *Mills* and thereby achieves an inequitable result. That purpose is to insure that the costs of litigation are not borne solely by one or a few shareholders.

In my opinion a substantial benefit was conferred on all the shareholders when an abuse was corrected which was prejudicial to the interests of the corporation. It was no less substantial because the benefit was not pecuniary. The Supreme Court recognized this in *Mills, supra* at 396, 90 S.Ct. at 627, 24 L.Ed.2d at 608 when it said "[I]t may be impossible to assign monetary value to the benefit" and only "corporate therapeutics" may be involved. The matter of crucial importance is that equity be done in a particular situation:

"Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses. (citation omitted) '[T]he foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation.' *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). *Mills, supra*, 396 U.S. at 392–393, 90 S.Ct. at 626, 24 L.Ed.2d at 606.

If equity is to prevail in the instant case we may properly create a legal fiction. *Union Refrigerator Transit Co. v. Kentucky*, 199 U.S. 194, 208, 26 S.Ct. 36, 39, 50 L.Ed.

150, 155 (1905).* We can assume that a common fund was created and award plaintiff his rightful attorneys' fees. Black Company was properly denied recovery because recovery would permit its majority shareholder, Meister Brau, to benefit from its wrongful acts. Continental should not be regarded as a loser in a law suit having to pay attorneys' fees and expenses to the winner. But for the application of the doctrine of unjust enrichment Continental would have been assessed damages much in excess of the sum awarded as attorneys' fees. Under this analysis *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) has no application. I would affirm the district court's judgment in all respects.

---

* "A legal fiction is the assumption, for purposes of justice, of a fact that does not or may not exist." *Dodo v. Stocker*, 74 Colo. 95, 219 P. 222 (1923).